UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA SPORTSWEAR NORTH AMERICA, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation; VENTEX CO., LTD., a foreign company; MICHAEL J. CAREY, an individual; WENDY M. CAREY, an individual; ROBERT (BOB) MURPHY, an individual; SCOTT DENIKE, an individual; KYUNG-CHAN GO, an individual; and MAN-SIK (PAUL) PARK, an individual,<br><br>Defendants. | Case No.: 20-CV-709 JLS (JLB)<br><br>**ORDER DENYING PLAINTIFF'S CORRECTED AND AMENDED *EX PARTE* MOTION TO TRANSFER OR, IN THE ALTERNATIVE, VACATE DKTS. 299 AND 300**<br><br>(ECF No. 315) |

Presently before the Court is Plaintiff Columbia Sportswear North America, Inc.'s ("Columbia") Corrected and Amended *Ex Parte* Motion to Transfer or, in the Alternative, Vacate Dkts. 299 and 300 ("Mot.," ECF No. 315). Also before the Court are Defendants Seirus Innovative Accessories, Inc. ("Seirus"); Michael J. Carey; Wendy M. Carey; Robert Murphy; and Scott DeNike's (collectively, the "Seirus Defendants") Response thereto ("Opp'n," ECF No. 318) and Columbia's Reply in support thereof ("Reply," ECF No. 320).

The Court vacated the hearing on this matter and took it under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 319. Having carefully considered the Parties' briefs and the law, the Court **DENIES** Columbia's Motion.

## BACKGROUND

### I. Factual Background

Columbia, a corporation organized under Oregon law with its principal place of business in Oregon, is an outdoor apparel company that "has invested heavily in developing innovative new products." Second Amended Complaint ("SAC," ECF No. 91) ¶¶ 11, 64. One such product is Columbia's "Omni-Heat® Reflective, a technology in which the innermost surface of garments is partially covered in reflective foil, which directs heat back to the user" in a breathable manner. *Id.* ¶ 64. Columbia uses this technology "in many products, including jackets, gloves, mittens, hats, socks, liners, and other apparel and accessories." *Id.* ¶ 66. Columbia has obtained patents that cover this technology, including U.S. Patent Nos. 8,424,119 (the "'119 Patent") and 8,453,270 (the "'270 patent") (collectively, the "Omni-Heat® Reflective Patents"). *Id.* ¶ 65.

Seirus, a Utah corporation with its principal place of business in Poway, California, sells gloves, mittens, hats, socks, and other winter accessories. *Id.* ¶¶ 12, 68. Defendant Ventex Co., Ltd. ("Ventex"), is a company formed under the laws of South Korea, with its principal place of business in South Korea. *Id.* ¶ 13. Ventex manufactures and sells fabrics and other materials for use in the production of clothing and "touted its ability to supply base fabrics with laminated reflective foil" called "MegaHeat RX." *Id.* ¶¶ 13, 69. In March 2013, Seirus and Ventex entered into a Vendor Agreement, under which Seirus agreed to buy MegaHeat RX from Ventex. *Id.* ¶ 69. Seirus calls its line of products incorporating Ventex's MegaHeat RX product "HeatWave." *Id.*

On December 4, 2013, Columbia filed a lawsuit against Seirus in the Western District of Washington (the "Seirus Washington Action"), alleging that Seirus's HeatWave line of products infringes one or more design patents owned by Columbia. *Id.* ¶ 72. On April 2, 2014, Columbia served an amended complaint on Seirus, alleging infringement of

the Omni-Heat® Reflective Patents. *Id.* ¶ 73. In January 2015, Columbia voluntarily dismissed the Seirus Washington Action and filed an action against Seirus in the District of Oregon alleging infringement of the Omni-Heat® Reflective Patents (the "Seirus Oregon Action"). *Id.* ¶ 74. Discovery in the Seirus Oregon Action closed in May 2016, a *Markman* hearing was held in May 2016, and the court issued a final claim construction order in August 2016. *Id.* ¶¶ 76–77. Subsequently, expert reports were exchanged and expert depositions conducted. *Id.* ¶ 78. In September 2016, the parties filed cross-motions for summary judgment, with oral argument scheduled for December 2016. *Id.* ¶ 79. "Seirus had already been found liable for infringement of one of Columbia's design patents and had stipulated that the patent was not invalid." *Id.* ¶ 80. Trial was to commence on April 11, 2017. *Id.* ¶ 81.

Columbia alleges that the Seirus Defendants "sought to delay and put off trial of the remaining infringement allegations against Seirus," *id.* ¶ 82, and "regretted [their] failure to file [*inter partes* review (']IPR[')] petitions concerning the two patents," *id.* ¶ 83. However, "the Seirus Defendants knew that Seirus, and any person in privity with it, was time-barred from filing IPR petitions pursuant to 35 U.S.C. § 315(b) and that no IPRs could be filed if Seirus was a real party-in-interest in the outcome of the IPRs." *Id.* Accordingly, "in or before October 2016," the Seirus Defendants, with Ventex, Kyung-Chan Go, and Man-Sik (Paul) Park (collectively, the "Ventex Defendants"), "agreed that *Ventex* would file IPR petitions against the '119 and '270 patents on Seirus's behalf," despite knowing "that this was unlawful under 35 U.S.C. § 315(b)." *Id.* ¶ 84 (emphasis in original).

Thereafter, Seirus and Ventex entered into an Exclusive Manufacturing Agreement ("EMA") "to disguise the fact that Seirus induced and would be paying for the Ventex IPRs." *Id.* ¶¶ 85–86. Pursuant to the EMA, Seirus paid Ventex an advance of $250,000 on November 3, 2016, "intended to give Ventex funds to pay for the preparation of the Ventex IPR petitions," and Seirus further "agreed to pay Ventex a fee per-yard of fabric over an extended period of time, called a 'HeatWave Surcharge' or a 'HeatWave Exclusive License Fee,' to continue to pay for Ventex's attorneys' fees and costs incurred in litigating

the Ventex IPRs." *Id.* ¶ 87 (citation omitted). Seirus would later recoup the advance through a concealed "discount" on subsequent orders, which would not be reflected in Seirus's purchase orders. *Id.* ¶¶ 87–88 (citation omitted). The "HeatWave Surcharge" or "HeatWave Exclusive License Fee" "amounted to nearly a 100% increase on the price of the fabric"—which, at that point, Seirus had been purchasing for more than four years—and was first reflected on purchase orders in January 2017, "within days of Ventex's filing of the first of the Ventex IPRs." *Id.* ¶¶ 90, 92 (citations omitted). "The total of the sums paid by Seirus closely approximates the amount Ventex anticipated paying in legal fees for the two Ventex IPRs." *Id.* ¶ 93 (citation omitted); *see also id.* ¶ 171. Seirus obtained no exclusivity under the EMA, *see id.* ¶¶ 97–103, and a Supplier Agreement between Seirus and Ventex already contained a non-competition clause, *see id.* ¶¶ 104–05.

In January 2017, Ventex electronically filed a separate IPR petition for each of the Omni-Heat® Reflective Patents. *Id.* ¶¶ 132–36. "Ventex falsely and fraudulently represented and alleged that it was the only real party-in-interest," *id.* ¶ 137, but "Ventex filed the Ventex IPRs only at the behest of Seirus and only with funding from Seirus, who desired review of the Omni-Heat® Reflective Patents for the purpose, *inter alia*, of staying and disrupting the Seirus Oregon Action," *id.* ¶ 142. The IPR petitions were served on Columbia's counsel of record in Oregon via FedEx. *Id.* ¶ 138.

On February 7, 2017, Seirus informed the court in the Seirus Oregon Action of Ventex's IPR filings, *id.* ¶ 210, and Seirus moved for a stay the following day, *id*. On April 20, 2017, Columbia filed a complaint in the District of Oregon against Ventex (the "Ventex Oregon Action"), alleging infringement of the Omni-Heat® Reflective Patents. *Id.* ¶ 217. Ventex moved for several extensions of time to answer the complaint before ultimately moving to stay pending the final decision in the IPRs, all of which motions the court granted. *Id.* ¶¶ 218–20, 224.

On July 26, 2017, the Patent Trial and Appeals Board ("PTAB") initiated trial on Ventex's IPRs. *Id.* ¶ 163. On August 1, 2017, Seirus moved to stay or continue the trial date of the Seirus Oregon Action pending determination of the IPRs. *Id.* ¶ 211. In late

2017, Ventex began to fall into arrears on the legal fees it owed to its outside counsel for the IPRs, resulting in several "advances" from Seirus on the "HeatWave Exclusive License Fee." *Id.* ¶¶ 175–200. During the pendency of the IPRs, Ventex proposed the settlement of the Seirus Oregon Action as a material term of settlement of the IPRs. *Id.* ¶¶ 201–02.

Meanwhile, in the IPRs, Columbia sought discovery of the relationship between Ventex and Seirus. *Id.* ¶ 226. These attempts were at first unsuccessful, but on September 27, 2018, the PTAB granted Columbia's motion for additional discovery pertaining to the issue. *Id.* ¶¶ 227, 229. However, Ventex's subsequent document production was incomplete, missing, among other things, a copy of the EMA. *Id.* ¶ 230. "It was only after Columbia discovered the IPR Funding Scheme and brought it to the PTAB's attention that Ventex then produced 2000 additional pages of previously concealed communications between Ventex and Seirus that were directly relevant," *id.* ¶ 231 (citation omitted), although, even then, the EMA was not produced, as Ventex had "deleted or destroyed every copy in Ventex's possession," *id.* ¶ 232.

Columbia provided the PTAB with the above evidence of Ventex and Seirus's collusion, and, "on January 24, 2019, the PTAB issued an order Dismissing the Petition, Vacating Institution of *Inter Partes* Review, and Terminating *Inter Partes* Reviews of the '119 and '270 Patents," *id.* ¶ 285, noting that the evidence "'strongly suggests that Ventex filed the Petition, at least in part, on Seirus's behalf,'" *id.* ¶ 288, and thus "Seirus should have been named a real party in interest," *id.* ¶ 289.

## II. Procedural History

Five days later, on January 29, 2019, Columbia filed the instant litigation in the District of Oregon (the "Oregon Action"). *See generally* ECF No. 1; *see also* ECF No. 309 at 3. The case was assigned to the Honorable Michael H. Simon. *See* ECF No. 5. Shortly thereafter, the PTAB issued a redacted, public version of its ruling, prompting Columbia to file an amended complaint. *See* ECF No. 309 at 4; *see also* ECF No. 26. After Judge Simon granted Columbia's motion for an interim protective order, *see* ECF Nos. 84–85, on July 19, 2019, Columbia filed the operative Second Amended Complaint ("SAC"), alleging

claims for: (1) violation of federal RICO, 18 U.S.C. § 1962(c), and conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d); (2) violation of Oregon RICO, ORS 166.720(3), and conspiracy to violate Oregon RICO in violation of OR 166.720(4); (3) fraud in violation of Oregon law; (4) actual fraud in violation of Virginia law; (5) civil conspiracy to commit fraud in violation of Virginia Code § 18.2-499; (6) civil conspiracy to commit fraud under Virginia common law; (7) abuse of process under Virginia law; and (8) exemplary punitive damages. *See generally* ECF No. 91.

The Seirus Defendants filed four pre-answer motions concerning the SAC: (1) a motion to dismiss all the Seirus Defendants for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), *see* ECF No. 103; (2) a motion to dismiss all the Seirus Defendants for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* ECF No. 111; (3) a motion to dismiss the claims against Seirus's in-house attorney, DeNike, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* ECF No. 101; and (4) a motion to strike pursuant to ORS 31.150, Oregon's anti-SLAPP law, *see* ECF No. 110. *See* ECF No. 309 at 4–5. On December 2, 2019, Judge Simon denied all the Seirus Defendants' motions. *See* ECF No. 156.

Seirus subsequently filed two appeals. One, a petition for writ of mandamus concerning the disposition of the motion to dismiss for lack of personal jurisdiction, was denied by the Ninth Circuit. *See* ECF No. 309 at 5 (citing ECF No. 225). The other, an interlocutory appeal from the denial of the anti-SLAPP motion, remains pending. *Id.* at 5–6, 10–11. Seirus also filed a motion to stay all proceedings pending the appeals and to certify Judge Simon's order regarding the federal RICO claim for interlocutory appeal. *Id.* at 6 (citing ECF No. 182). Judge Simon denied the request for certification for interlocutory appeal and to stay the federal RICO claim, although Judge Simon stayed discovery into the state law claims. *Id.* (citing ECF No. 218).

Meanwhile, the Ventex Defendants all were served. *Id.* at 7 (citing ECF Nos. 90, 159, 178, 184, 192, 284). Default was entered as to Defendants Go and Park. *Id.* (citing ECF Nos. 170, 204). Ventex appeared in the case on January 6, 2020. *Id.*

On February 4, 2020, Ventex sent Judge Simon a letter raising a potential conflict of interest. *See id.* at 9; *see also id.* Exs. 1 & 2. On February 5, 2020, Judge Simon recused himself. *See* ECF No. 239. That same day, the case was reassigned to the Honorable Michael W. Mosman. *See* ECF No. 241.

On February 10, 2020, Ventex moved to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(2)–(5). *See* ECF No. 246. However, on March 30, 2020, Ventex's counsel moved to withdraw. ECF No. 309 at 7 (citing ECF No. 289). On March 31, 2020, the motion to withdraw was granted. *Id.*; *see also* ECF No. 290. Ventex has failed to obtain new counsel and is currently pro se. *See generally* Docket.

Meanwhile, on February 5, 2020, the Seirus Defendants answered Columbia's SAC. *See* ECF No. 243. On February 18, 2020, the Seirus Defendants also filed a motion for reconsideration of Judge Simon's denial of their motion to dismiss for lack of personal jurisdiction. *See* ECF No. 254. Amended answers were filed on February 25, 2020, *see* ECF No. 262, and March 5, 2020, *see* ECF No. 276.

On April 14, 2020, Judge Mosman granted the Seirus Defendants' motion for reconsideration. *See generally* ECF No. 299. Judge Mosman found that the allegations of the SAC were not adequate to show that the Seirus Defendants had "minimum contacts" with Oregon sufficient to exercise personal jurisdiction over them, as all of the acts were "required" or "justified by" the litigation of the Seirus Oregon Action. *See* ECF No. 299 at 8–11. Judge Mosman dismissed the claims against the Seirus Defendants and transferred the remainder of the case to this District. *See generally* ECF No. 300. Columbia has filed a Notice of Appeal concerning this order. *See* ECF No. 309 at 10.

On April 16, 2020, this Court ordered the Parties to file a joint status report on or before April 30, 2020, "[t]o facilitate transfer of this action and apprise this Court of the status of the case and the pending appeal." *See* ECF No. 303 at 1. Columbia moved *ex parte* for an extension of time, *see* ECF No. 305, which the Court granted, *see* ECF No. 306. On May 12, 2020, Columbia filed a Status Report. *See* ECF No. 309. Although "[t]he Seirus Defendants indicated an interest in participating in this status report[,]"

1  Columbia explained that doing so would waive their dismissal from the case, because it
2  would constitute a voluntary appearance in this Court." *Id.* at 14 n.11.  Accordingly, Fish
3  & Richardson, counsel for the Seirus Defendants, submitted a separate letter by e-mail,
4  which was filed on May 15, 2020.  *See* ECF No. 313.

5        In its Status Report, Columbia indicated that it "believes that the most appropriate
6  path forward is to return this case to the Oregon district court."  ECF No. 309 at 13 (citation
7  omitted).  On May 13, 2020, the Court issued an order directing Columbia to make its
8  request in a formal noticed motion on or before June 4, 2020.  *See generally* ECF No. 310.

9        Columbia initially filed the instant Motion on May 15, 2020.  *See* ECF No. 311.
10 Columbia filed its amended Motion on May 18, 2020.  *See* ECF No. 315.

11 **III.  The Present Motion**

12       Columbia seeks to transfer the case back to the District of Oregon "to cure specific
13 procedural defects and ambiguities in the Order and 'Judgment' docketed as ECF 299 and
14 300" (the "Transfer Orders").  Mot. at 1 (footnote omitted).  Alternatively, Columbia seeks
15 to vacate the portions of the Transfer Orders transferring the case, "thereby returning the
16 case to the Oregon district court."  *Id.* at 1–2.

17       Columbia contends that the District of Oregon "lacked subject matter jurisdiction
18 over all of the state law causes of action alleged by Columbia," as jurisdiction "had been
19 divested by the Seirus Defendants' appeal of the denial of their anti-SLAPP motion."  *Id.*
20 at 2.  Columbia argues that the Seirus Defendants are judicially estopped from arguing
21 otherwise, as, in seeking a stay that was granted, they argued that the appeal of the anti-
22 SLAPP motion "'divests the [District] Court of jurisdiction over the state law claims.'"  *Id.*
23 at 2–3 (citing ECF No. 182 at 2) (emphasis omitted) (alteration in original); *see also id.* at
24 4–7.  Because the Transfer Orders were "ineffective as to the state law claims for want of
25 subject matter jurisdiction," "only the federal RICO claim was dismissed as to the Seirus
26 Defendants, and only that claim was—or could be—transferred to this Court."  *Id.* at 3.
27 Thus, the Transfer Orders "had the apparently unintended effect of splitting this case into
28 two, distinct cases: an action against the Ventex Defendants in this Court, and a portion of

the case against the Seirus Defendants remaining on appeal from the Oregon district court." *Id.* at 3–4. Columbia claims the case must be returned to the District of Oregon to cure this alleged defect. *Id.* at 4.

Columbia also asserts that the Transfer Orders were "erroneous" in both dismissing the Seirus Defendants for lack of personal jurisdiction without assessing the "interests of justice" and then transferring the case to a jurisdiction that does have personal jurisdiction over the Seirus Defendants. *Id.* at 7–8 (citing 28 U.S.C. § 1631; *Town of North Bonneville, Wash. v. U.S. Dist. Court, W. Dist. of Wash.*, 732 F.2d 747, 751 (9th Cir. 1984)). According to Columbia, failing to consider the "interests of justice" was an abuse of discretion, and Judge Mosman could not both dismiss some of the defendants and transfer the case. *Id.* at 8–10. Thus, "[t]he most appropriate path forward is to return this case to the Oregon district court to cure these issues, satisfy Section 1631, and clarify the Oregon court's intentions." *Id.* at 10 (citations omitted).

In their Opposition, the Seirus Defendants make five arguments against transferring the case back to the District of Oregon. First, the Seirus Defendants urge that the motion is effectively a defective motion for reconsideration. Opp'n at 2. The Seirus Defendants claim that Columbia's Motion fails to comply with the procedural requirements for a reconsideration motion and fails to address the legal standard for reconsideration. *Id.* at 2–4. Second, the Seirus Defendants claim that Columbia failed to raise any of these arguments in Columbia's opposition to the motion for reconsideration granted in the Oregon Action, and therefore the arguments are waived. *Id.* at 4.

Third, the Seirus Defendants claim that Columbia's arguments are premised on "legal errors." *Id.* As an initial matter, the Transfer Orders did not implicate the issues involved in the pending appeal of the anti-SLAPP motion, so the court "retained jurisdiction to consider other matters unrelated to the anti-SLAPP appeal, such as personal jurisdiction." *Id.* at 5. Additionally, "Section 1631 is not properly applied to personal jurisdiction," *id.* at 6, *see also id.* at 6–7; to the extent dismissal was an "abuse of discretion," "this court does not sit in review of the Oregon Court's decision; that role is

given to the appellate courts," *id.* at 7–8; and, at any rate, "Columbia fails to demonstrate that justice required transferring rather than dismissing the Seirus Defendants," *id.* at 8. Furthermore, Judge Mosman was not required to enter partial final judgment under Federal Rule of Civil Procedure 54(b)—which Columbia did not request, at any rate—and transfer back to the District Oregon is not required to seek Rule 54(b) certification, which Columbia can seek in this Court. *Id.* at 9. Nor does Columbia raise any "'extraordinary circumstances involving a grave miscarriage of justice'" warranting transfer back to the transferor court. *Id.* at 9–10. Fourth, Columbia's request violates the principle of comity, *id.* at 10; and, fifth and finally, the motion is unnecessary, as "Columbia can add the Seirus Defendants back into this case either by filing a new case and moving to consolidate, or by seeking leave to amend the present case," *id.* at 11.

On reply, Columbia argues that the Court "can bring the Seirus Defendants back into the case simply by vacating the dismissal order," which "would effectively convert the Oregon District Court's 'dismissal and transfer' to a transfer of the case, intact." Reply at 2 n.2. However, "[f]airness and respect to Judge Mosman counsel that this case be returned to him so that he consider the[] issues or can clarify his intentions. Comity requires nothing less." *Id.* at 3. Columbia argues that its motion is not a motion for reconsideration; but, even to the extent it is, it is not untimely, as the Court issued a deadline for the filing of the present Motion. *Id.* at 4 (citing ECF No. 310).

Columbia asserts it has not waived the arguments it now makes because: (1) they were not relevant to the arguments the Seirus Defendants raised in their reconsideration motion, *id.* at 4–5; (2) "Section 1631 ***cannot*** be waived," *id.* at 5 (emphasis in original); and (3) "Judge Mosman's decision ordered relief that Seirus never requested in its motion, and that Columbia therefore had no reason to address," *id.* at 6, including improperly transferring the case after dismissing the Seirus Defendants, *id*. Columbia argues that Section 1631 does apply to personal jurisdiction. *Id.* at 6–7. Moreover, the "extraordinary circumstances" legal standard the Seirus Defendants seek to apply "applies only when

///

transferring cases *between circuits*," *id.* at 7 (emphasis in original); even if that standard were to apply, however, "the circumstances here are extraordinary," *id.* at 8.

## REQUEST TO RE-TRANSFER TO TRANSFEROR COURT

### I.     Legal Standard

"Once a transferor court has transferred an action to a transferee court, the transferee court should generally abide by the transferor court's transfer decision and should not retransfer the case." *Goor v. Vignoles*, No. C 12-01794 DMR, 2012 WL 5499841, at *2–6 (N.D. Cal. Nov. 13, 2012) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988); *Ametek Inc. v. HewlettPackard Co.,* C–90–20278–DLJ, 1990 WL 10072473, at *1 (N.D. Cal. July 10, 1990)). "Accordingly, a transferee court should not re-transfer except under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous." *Dr. Eric Natkin, DO PC v. Am. Osteopathic Ass'n*, No. 3:16-CV-01494-SB, 2017 WL 9052080, at *3–4 (D. Or. Mar. 29, 2017) (citing *Gorzynski v. JetBlue Airways Corp.*, 10 F. Supp. 3d 408, 412 (W.D.N.Y. 2014); *Pac. Coast Marine Windshields v. Malibu Boats*, No. 11–1594, 2011 WL 6046308, at *2 (E.D. Cal. Dec. 5, 2011)) (internal quotation marks omitted), *report and recommendation adopted sub nom. Dr. Erik Natkin, DO PC v. Am. Osteopathic Ass'n*, No. 3:16-CV-1494-SB, 2017 WL 1838574 (D. Or. May 8, 2017); *see also SPH Am., LLC v. High Tech Computer Corp.*, No. 08CV2146 DMS (RBB), 2009 WL 10672276, at *2 (S.D. Cal. Mar. 4, 2009) ("Although courts have the power to revisit their own decisions or those of a sister court, as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (citation and internal quotation marks omitted); 15 C. Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 3846 (4th ed.) [hereinafter "Fed. Prac. & Proc."] ("Not surprisingly, transferee courts have expressed a strong reluctance to review a transfer order indirectly by means of a motion to retransfer.  They have the power to do so if the contention is that the transferor court lacked the power to order the transfer rather than merely that the transferor court abused its discretion in applying the statute.  Even then, though, the

doctrine of law of the case and notions of judicial comity ordinarily suggest that the decision of a coordinate court should not be reconsidered.") (footnotes omitted).

The high burden of establishing that re-transfer is appropriate is on the moving party. *Dr. Erik Natkin*, 2017 WL 9052080, at *4 ("As the moving parties, Plaintiffs bear the burden of demonstrating that the Central District of California was not only 'wrong' in transferring the case to the District of Oregon, but that it was 'clearly wrong.' Satisfying this burden is no small feat because the Court need only find that the Central District of California's transfer decision was 'plausible,' regardless of whether it 'agrees' with the decision.") (quoting *Verint Sys. Inc. v. Envision Telephony Inc.*, No. 14–1507, 2015 WL 753540, at *1 (W.D. Wash. Feb. 23, 2015)).

**II.    Analysis**

As an initial matter, the Court will dispose of the Seirus Defendants' argument that Columbia's Motion is procedurally improper. The Court agrees with Columbia that its Motion, even if construed as a motion for reconsideration, is not untimely, given the Court's May 13, 2020 Order providing a date certain by which Columbia was to file this Motion. *See* ECF No. 310. Furthermore, the Motion does not, as the Seirus Defendants contend, fail to substantively address the standard for reconsideration, *see* Opp'n at 3–4, as Columbia essentially argues that Judge Mosman "clearly erred" in failing to consider whether the "interests of justice" required transfer rather than dismissal under Section 1631. Finally, to the extent Columbia's Motion fails to comply with Civil Local Rule 7.1(i), the Court can exercise its inherent authority to nevertheless consider the Motion on its merits. *In re Palomar Crash of Jan. 24, 2006*, No. 06-CV-02711-DMS-POR, 2009 WL 10671588, at *1 (S.D. Cal. Jan. 21, 2009) (exercising inherent authority to consider motion for reconsideration that indisputably failed to comply with Civil Local Rule 7.1(i)'s procedural requirements). Accordingly, the Court declines to deny Columbia's Motion based on such technicalities.

However, the Court also is not persuaded by Columbia's argument that the Seirus Defendants are judicially estopped from claiming that the issue of personal jurisdiction is

not stayed pending the appeal.  The Court has reviewed the Seirus Defendants' stay motion, and, while there are several broad statements about the scope of the stay in the briefing, the core of the Seirus Defendants' case law and arguments is that "the court cannot exercise jurisdiction over *issues* on appeal."  ECF No. 182 at 8 (emphasis added).  If the Seirus Defendants were reversing course on whether the district court retained jurisdiction over the merits of their state law claims pending the appeal of their anti-SLAPP motion, the Court would have no difficulty finding the Seirus Defendants judicially estopped from taking that stance; however, the Court agrees that personal jurisdiction is not one of the issues on appeal, and thus an issue over which the district court retains "jurisdiction" despite the appeal.[1]  Accordingly, the Court disagrees with Columbia's central premise that the Transfer Orders effectively split this litigation into two separate cases.  Instead, the Court believes that all the causes of action—including the state law claims stayed on their merits pending the appeal—were transferred pursuant to the Transfer Orders.

Accordingly, the Court must ask whether the Transfer Orders, in dismissing the Seirus Defendants and transferring the action, were "manifestly erroneous" or otherwise present "extraordinary circumstances" that work a "manifest injustice."[2]  While the Court

---

[1] At any rate, the Court is not convinced that an appeal strips the district court of subject matter jurisdiction over the appealed issues, as Columbia argues.  *See* Mot. at 2–4; *see, e.g.*, Rutter Group, Fed. Ninth Cir. Civ. App. Prac. Ch. 3-E § 3:406.1 ("We describe the divestment rule as 'jurisdictional' because the court often uses that term.  But in reality, it is a nonjurisdictional processing rule that promotes judicial economy.  The court has explained that, technically, the rule is 'not one that strips the district court of subject matter jurisdiction.'") (citing *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1121 (9th Cir. 2002); *Rodriguez v. Cnty. of Los Angeles*, 891 F3d 776, 791 (9th Cir. 2018)); *see also* Fed. Ct. App. Manual § 26:2 (6th ed.) ("Describing the roles of the respective courts during an appeal in terms of 'jurisdiction' is inaccurate and interferes with a more careful analysis.  The question is really one of comity, *i.e.*, based on the type of appeal and the issue presented, would district court action pending appeal serve the interests of justice and judicial efficiency.").

[2] Columbia disputes that this is the correct legal standard to apply to its request to re-transfer this action, and suggests this standard only applies to requests to re-transfer cases between circuits rather than within a circuit.  *See* Mot. at 11 n.8; Reply at 7–8.  Columbia argues that "Seirus cites no case invoking this standard when a case is transferred *within a circuit*."  Reply at 7 (emphasis in original).  However, Columbia, which bears the burden of establishing the propriety of re-transfer, fails to point the Court to a different standard that purportedly applies intra-circuit, nor has this Court found such an alternate standard.  Rather, it appears that courts have applied this standard to intra-circuit transfers.  *See, e.g.*,

is sympathetic to Columbia's frustrations and the inefficiencies of the Transfer Orders' disposition of the issues and may have decided these issues differently on a clean slate, the Court is of the mind that Columbia has failed to carry its burden and satisfy such a stringent standard.

For instance, were it clear that Section 1631 applies to personal jurisdiction, the failure to evaluate the "interests of justice" may have been erroneous.  However, given that courts appear split on this issue, the Court cannot find that Judge Mosman committed clear error in not evaluating the "interests of justice" as required by Section 1631.  *See, e.g.*, 15 Fed. Prac. & Proc. § 3842 (4th ed.) ("Although the courts are rather evenly divided on the subject, the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue.  The textual argument for extending Section 1631 to situations in which a court lacks personal jurisdiction is certainly strong.  Black's Law Dictionary defines 'want of jurisdiction' to include a lack of either subject matter or personal jurisdiction.  But in construing the statute, this wording is best seen as a case of clumsy drafting.  The statute's legislative history, as embodied in the Senate Report accompanying it, is quite clear that Section 1631 was intended to apply only to situations in which a court lacked subject matter jurisdiction.") (footnote omitted).

Likewise, had Columbia pointed to any authority for the proposition that it is manifestly erroneous or unjust to dismiss some defendants and then transfer the case, rather than dismissing all the defendants or transferring the entire action, the Court perhaps would have found it appropriate to revisit the Transfer Orders.  However, Columbia does not point to, and the Court could not find, any case law holding as much.  While the Court admits that this resolution of the Seirus Defendants' reconsideration motion was not the most

///

---

*Bradford v. Hernandez*, Case No. CV 18-9778-SVW-KK, 2019 WL 4383949 (C.D. Cal. Jan. 16, 2019). Accordingly, the Court believes that the "extraordinary circumstances" standard is applicable here, where the Court is being asked to revisit the decision of a fellow district court judge, regardless of the circuit in which that judge sits.

efficient, the Court does not find that it is manifestly erroneous or rises to the level of an extraordinary circumstance working a manifest injustice.

Nor does Columbia seem to assert any of the grounds that typically have been found otherwise to constitute "manifest injustice." For instance, Columbia does not assert—nor does it appear to the Court—that any claims would be time-barred should Columbia have to re-file suit against the Seirus Defendants. *See, e.g.*, *Davis v. Unitel Voice, LLC*, No. 218CV673JCMBNW, 2020 WL 1044006, at \*5 (D. Nev. Mar. 4, 2020) (vacating order dismissing defendants for want of personal jurisdiction and granting motion for reconsideration where statute of limitations had run as to those defendants).

But, even if the Transfer Orders had been clearly wrong or manifestly unjust, the Court is not convinced that it has the power to transfer this case back to a district that concluded it lacks personal jurisdiction over the Seirus Defendants. All of the potentially applicable transfer provisions permit a court to transfer the action to another court where the action could or might have been brought. *See* 28 U.S.C. § 1631 (providing "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed"); *id.* § 1404(a) (providing, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented"); *id.* § 1406(a) (providing "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

Columbia does not argue that Judge Mosman's determination that the District of Oregon lacks personal jurisdiction over the Seirus Defendants is "manifestly erroneous," and this Court, having carefully reviewed the Transfer Orders, finds them well reasoned and the conclusion that the District of Oregon lacked personal jurisdiction over the Seirus Defendants sound. Accordingly, the Court is not convinced that re-transfer would be

appropriate to a court where this action may have been brought initially, but seemingly erroneously, due to a lack of personal jurisdiction. *Goor*, 2012 WL 5499841, at *6 (denying motion to re-transfer) ("Because the court finds that the facts in evidence before it do not provide a sufficient basis for finding that the New Jersey district court may exercise personal jurisdiction over Vignoles, and because Vignoles has not consented to jurisdiction in that court, this court finds that Goor has not demonstrated that the District of New Jersey is one in which this action 'might have been brought.'") (quoting 28 U.S.C. § 1404(a)); *see also Dr. Eric Natkin*, 2017 WL 9052080, at *4 (denying re-transfer motion and noting "that '§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants'") (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)).

Accordingly, to the extent Columbia's Motion seeks a re-transfer of this action to the District of Oregon, the Court **DENIES** the Motion.

### REQUEST TO VACATE

**I.  Legal Standard**

Federal Rule of Civil Procedure 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"The Ninth Circuit has not squarely addressed what constraints, if any, apply to a district court considering whether to vacate its own orders." *Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*, No. C11-335RAJ, 2012 WL 3780345, at *2 (W.D. Wash. Aug. 31, 2012) (emphasis in original) (citing *Am. Games, Inc. v. Trade Prods., Inc.,* 142 F.3d 1164, 1169 (9th Cir. 1998); *Zimores v. Veterans Admin.,* 778 F.2d 264, 267 (5th Cir. 1985); *Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001)). However, other district courts within the Ninth Circuit have noted that "[s]uch motions are generally

disfavored" and have suggested that considerations similar to those applied on a motion to reconsider should apply. *RB Rubber Prod., Inc. v. ECORE Int'l, Inc.*, No. 3:11-CV-319-AC, 2013 WL 3432081, at *2 (D. Or. July 8, 2013) (citations omitted).

Further, "[a] district court also 'possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *Lions Gate Entm't, Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024 DDP-E, 2017 WL 4621541, at *1 n.3 (C.D. Cal. Oct. 16, 2017) (quoting *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)); *see also De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2008 WL 3852682, at *2 (E.D. Wash. Aug. 13, 2008) ("A court has complete power over interlocutory orders made therein and has authority to revise them when it is 'consonant with equity' to do so.") (citing *Simmons v. Brier Bros. Co.,* 258 U.S. 82 (1922); *U.S. Gypsum Co. v. Pac. Award Metals, Inc.,* 2006 WL 1825705 (N.D. Cal. 2006)); *Midmountain Contractors, Inc. v. Am. Safety Indem. Co.*, No. C10-1239JLR, 2013 WL 5492952, at *4 (W.D. Wash. Oct. 1, 2013) (same); *Pi-Net Int'l, Inc. v. Hertz Corp.*, No. CV1210012PSGJEMX, 2013 WL 12130574, at *2 (C.D. Cal. Aug. 5, 2013) ("'Courts have inherent power to modify their interlocutory orders before entering a final judgment. In addition, the Federal Rules of Civil Procedure explicitly grant courts the authority to modify their interlocutory orders.'") (quoting *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989)). This "power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure," and therefore "is not abridged by the Federal Rules of Civil Procedure." *Santa Monica Baykeeper*, 254 F.3d at 886–87.

"[T]hat power is not lost when the case is assigned mid-stream to a second judge." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011). Nonetheless, the Ninth Circuit has cautioned that, while "[t]here is no strict prohibition against one district judge reconsidering and overturning the interlocutory order or ruling of a prior district judge in the same case before final judgment, . . . 'one judge should not overrule another except for the most cogent reasons.'" *E.E.O.C. v. Serrano's Mexican Restaurants, LLC*, 306 F. App'x

406, 407 (9th Cir. 2009) (citing *United States v. Desert Gold Min. Co.,* 433 F.2d 713, 715 (9th Cir. 1970); *Abada v. Charles Schwab & Co., Inc.,* 300 F.3d 1112, 1117–18 (9th Cir. 2002); *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 530 (9th Cir. 2000)). "Cogent reasons include," for example, "a determination that a prior order was clearly erroneous and would result in a 'useless trial.'" *Id.* (citing *Castner v. First Nat'l Bank of Anchorage,* 278 F.2d 376, 380 (9th Cir. 1960); *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1027 (9th Cir. 2001)).

**II.   Analysis**

As an alternative to re-transfer, Columbia argues that the Court should vacate the portions of the Transfer Orders transferring the Oregon Action to this District (which would effectively transfer the case back to the District of Oregon), *see* Mot. at 1–2, or that the Court should vacate the portion of the Transfer Orders dismissing the Seirus Defendants (which "would effectively convert the Oregon District Court's 'dismissal and transfer' to a transfer of the case, intact"), *see* Reply at 2 n.2.

For the reasons provided *supra* at 12–16, this Court concludes that a transfer of this action back to the District of Oregon may not be permissible and, at any rate, is not warranted by the facts and law. Accordingly, the Court **DENIES** the request to vacate the portions of the Transfer Orders transferring this action.

As to the request to vacate the portions of the Transfer Orders dismissing the Seirus Defendants from this action, again, the Court is sympathetic to the inefficiencies associated with asserting anew Columbia's claims against the Seirus Defendants in this District. Nonetheless, the Court does not believe that these considerations present "cogent reasons" that would overcome the important considerations of comity and law of the case. *See Serrano's Mexican Restaurants, LLC*, 306 F. App'x at 407. Accordingly, "in the interests of comity and finality," *S. Cal. Stroke Rehab. Assocs., Inc. v. Nautilus, Inc.*, No. 09-CV-744 JLS (AJB), 2009 WL 10672187, at *2 (S.D. Cal. May 28, 2009), the Court also **DENIES** the request to vacate the portions of the Transfer Orders dismissing the Seirus Defendants.

**CONCLUSION**

In light of the foregoing, the Court **DENIES** Columbia's Motion (ECF No. 315).

**IT IS SO ORDERED.**

Dated: January 22, 2021

Hon. Janis L. Sammartino
United States District Judge