UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA SPORTSWEAR NORTH AMERICA, INC., | Case No.: 20-cv-709-RSH-JLB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF COLUMBIA'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| VENTEX CO., LTD., et al., | |
| Defendants. | [ECF Nos. 371, 376] |

Plaintiff Columbia Sportswear North America, Inc. ("Columbia"), initiated the instant action against Defendants Ventex Co., Ltd. ("Ventex"), Kyung-Chan Go, and Man-Sik Park (collectively, the "Ventex Defendants"), as well as former Defendants Seirus Innovative Accessories, Inc. ("Seirus"), Michael J. Carey, Wendy M. Carey, Robert Murphy, and Scott Denike (collectively, the "Seirus Defendants"). Plaintiff alleges the Seirus Defendants and Ventex Defendants colluded to file fraudulent *inter partes* review ("IPR") petitions before the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office ("USPTO").

The Seirus Defendants have since been dismissed from this action with prejudice. ECF No. 368. Default has been entered in this case against the Ventex Defendants, and

Columbia now moves for default judgment against them. ECF Nos. 170, 204, 333, 371, 376. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the matter presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part Columbia's motion.

## BACKGROUND

### I.   Factual Background

Columbia makes the following allegations in its Annotated Second Amended Complaint, ECF No. 216 ("ASAC"), which the Court assumes to be true in considering Columbia's motion for default judgment. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### A.   The Columbia and Seirus Patent Dispute ("*Columbia I*")

This case arises from events related to a patent infringement suit Columbia filed against Seirus in the U.S. District Court for the District of Oregon. *See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 15-cv-64 (D. Or.) (hereinafter, "*Columbia I*").[1] Columbia alleges that to delay trial in *Columbia I* and prevent Columbia from collecting a financial judgment, the Seirus Defendants and Ventex Defendants conspired to file fraudulent IPR petitions before the PTAB.

Plaintiff Columbia is an outdoor apparel company based in Portland, Oregon. ASAC ¶¶ 11, 64.[2] In the past two decades, Columbia has invested heavily in developing new products, including Omni-Heat Reflective, "a technology in which the innermost surface of garments is partially covered in reflective foil, which directs heat back to the user." *Id.* ¶ 64. Columbia uses this technology "in many products, including jackets, gloves, mittens, hats, socks, liners, and other apparel and accessories." *Id.* ¶ 66. Columbia

---

[1]     This case was transferred to this District on September 5, 2017. *See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, *Inc.*, No. 17-cv-1781-HZ (S.D. Cal.) (hereinafter, "*Columbia I*, No. 17-cv-1781-HZ (S.D. Cal.)").

[2]     Unless otherwise indicated, all citations in this Order refer to filings in this case, No. 20-cv-709.

obtained several patents covering its Omni-Heat Reflective technology, including at least one design patent, U.S. Patent No. D657,093 ("the '093 Design Patent"), and two utility patents, U.S. Patent Nos. 8,424,119 ("the '119 Utility Patent") and 8,453,270 ("the '270 Utility Patent") (collectively, "the Omni-Heat Patents"). ASAC ¶ 65; *Columbia I*, No. 17-cv-1781-HZ (S.D. Cal.), ECF No. 1 ¶ 2.

Defendant Seirus is a Utah corporation that sells gloves, mittens, hats, socks, liners, and other accessories, with its principal place of business in Poway, California. ASAC ¶¶ 12, 68. In 2012, Seirus launched a plan to copy Columbia's Omni-Heat Reflective technology. *Id.* ¶ 68. To that end, in March of 2013, Seirus entered into an agreement with Ventex, a South Korean textile manufacturer and broker that touted its ability to supply base fabrics with laminated reflective foil, which Ventex called "MegaHeat RX." *Id.* ¶ 69. Seirus agreed to buy this fabric from Ventex to produce and sell a new, copied line of products called "HeatWave." *Id.* ¶¶ 69–71.

On December 4, 2013, Columbia filed a lawsuit against Seirus in the U.S. District Court for the Western District of Washington, *Columbia Sportswear N. Am., Inc v. Seirus Innovative Accessories, Inc.*, No. 13-cv-2175 (W.D. Wash.) (hereinafter, the "Washington Action"), alleging Seirus' HeatWave products infringed the '093 Design Patent. ASAC ¶ 72. Columbia subsequently amended its complaint in the Washington Action, adding claims for infringement of the '119 and '270 Utility Patents. ASAC ¶ 73. In January 2015, Columbia voluntarily dismissed the Washington Action and filed *Columbia I* in the District of Oregon, alleging infringement of the Omni-Heat Patents. *Id.* ¶ 74.

Between January 2015 and January 2017, Columbia and Seirus litigated *Columbia I* to the verge of trial. *Id.* ¶¶ 76–80. Given that summary judgment had been entered in Columbia's favor on the issue of whether Seirus' HeatWave products infringed the '093 Design Patent, Columbia claims the trial would have invariably resulted in a financial judgment against Seirus. ASAC ¶ 80; *Columbia I*, No. 17-cv-1781-HZ (S.D. Cal.), ECF No. 105.

3

To delay the *Columbia I* trial, Seirus and Ventex purportedly entered into an agreement by which Ventex would file IPR petitions before the USPTO on Seirus' behalf, while at the same time falsely representing to the USPTO that Seirus was not a real party-in-interest to these IPRs. *Id.* ¶¶ 82–93, 132–164.

## B.   The Ventex IPRs

Under the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), a person who is not the owner of a patent may file a petition with the USPTO to institute an IPR proceeding. *See Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1298 (Fed. Cir. 2020) (citing 35 U.S.C. § 311(a)). An IPR petition requests that the USPTO reexamine whether an issued patent complies with "certain patentability requirements of novelty or obviousness over prior art." *Apple Inc. v. Vidal*, 63 F.4th 1, 6 (Fed. Cir. 2023). If there is a "reasonable likelihood" that the petitioner will prevail on at least one of the challenged patent claims, the USPTO may institute IPR proceedings. *Uniloc 2017*, 966 F.3d at 1298. However, the USPTO may not institute an IPR proceeding "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party-in-interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b). Accordingly, a petitioner is required to identify all real parties-in-interest to an IPR. *Id.* § 312(a)(2); 37 C.F.R. § 42.8(b)(1).

On January 2017, Ventex filed two separate IPR petitions requesting that the USPTO reexamine the '119 and '270 Utility Patents. ASAC ¶ 132. Although Seirus funded these IPRs, Seirus was time-barred from being a real party-in-interest or in privity with any party to any IPR petition seeking to invalidate these patents. *Id*. ¶¶ 4, 83, 316. For these reasons, Ventex did not identify Seirus as a real party-in-interest. *Id.* ¶¶ 144, 148. To disguise Seirus' involvement, Ventex and Seirus entered into an "IPR Funding Contract" under the guise of an exclusivity agreement, labeled the "Exclusive Manufacturing Agreement." *Id.* ¶¶ 85–86. Under the terms of the IPR Funding Contract, Ventex agreed to exclusively sell HeatWave fabric to Seirus within a five-year period. *Id.*

¶ 94. In exchange, Seirus agreed to purchase a certain minimum number of yards of HeatWave fabric from Ventex over the same five-year period. *Id.* In actuality, Seirus obtained no exclusivity under the IPR Funding Contract. *Id.* ¶¶ 97–105. Rather, the purpose of the agreement was for Seirus to provide Ventex with the funds to prepare and then litigate the Ventex IPR petitions. *Id.* ¶¶ 85–87.

### C.   Seirus' Attempts to Stay the *Columbia I* Trial

Shortly after the Ventex IPR petitions were filed, Seirus moved to stay *Columbia I* until after the Ventex IPR petitions were resolved. *Id.* ¶ 210. After the Ventex IPR proceedings were instituted, Seirus moved for an expedited hearing on its motion to stay. *Id.* ¶ 211. However, Seirus' attempts to stay *Columbia I* were not successful. Instead, in September 2017, the District Court in Oregon denied Seirus' motion to stay and transferred the suit to this District, where the case has been litigated through two jury trials and two Federal Circuit appeals. *Columbia I*, No. 17-cv-64-HZ (D. Or.), ECF Nos. 254, 403, 421, 423, 481, 609, 617, 623.[3] The case is currently before the Federal Circuit. *See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 21-2299 (Fed. Cir.).

---

[3]   Shortly before the first trial, Columbia voluntarily dropped its claims against Seirus as to the '119 Utility Patent. *Columbia I*, No. 17-cv-64-HZ (D. Or.), ECF No. 277. Following a ten-day trial, the jury awarded Columbia $3,018,174 for Seirus' infringement of the '093 Design Patent, but found in favor of Seirus for Columbia's claims of infringement as to the remaining '270 Utility Patent, finding the asserted claims to be invalid. *Columbia I*, No. 17-cv-64-HZ (D. Or.), ECF Nos. 377, 403.

Both Parties appealed this decision to the Federal Circuit, which: (1) upheld the jury's finding of invalidity as to the '270 Utility Patent; but (2) reversed the district court's summary judgment finding of infringement of the '093 Design Patent. *Columbia I*, 17-cv-64-HZ (D. Or.), ECF No. 481.

A second trial then proceeded based on Columbia's claims of infringement against Seirus as to the '093 Design Patent. Following a four-day trial, the jury found Columbia had not proven Seirus infringed the '093 Design Patent. *Columbia I*, No. 17-cv-64-HZ (D. Or.), ECF Nos. 606, 609. Both Parties have again appealed that decision to the Federal Circuit—Seirus's appeal being a conditional one to preserve its rights to address Columbia's appeal. *Columbia I*, No. 17-cv-64-HZ (D. Or.), ECF Nos. 617, 623.

### D.    The Columbia and Ventex Patent Dispute ("*Columbia II*")

On April 20, 2017, Columbia filed a separate patent infringement suit against Ventex in the District of Oregon. ASAC ¶ 217; *Columbia Sportswear N. Am., Inc. v. Ventex Co.*, No. 17-cv-623 (D. Or.) ("*Columbia II*"). After the Ventex IPRs were instituted, Ventex sought, and was granted, a stay in *Columbia II*.[4] ASAC ¶¶ 220, 224.

### E.    The PTAB's Dismissal of the Ventex IPRs

At the same time, the Ventex IPRs continued to move forward. Between July 26, 2017, and December 2018, Columbia sought and obtained evidence Seirus was funding the Ventex IPRs, despite Ventex's efforts to conceal this evidence. ASAC ¶¶ 226–84.

On January 24, 2019, after being presented with some of this evidence, the PTAB issued an order terminating the Ventex IPRs. *Id.* ¶ 285. Of note, the PTAB held that: (1) Seirus was a real party-in-interest to the Ventex IPRs; (2) Seirus was in privity with Ventex; and (3) there was evidence suggesting the IPR Funding Contract "may have been a cover for Seirus to fund the *inter partes* reviews without leaving a paper trial establishing Ventex's awareness that, because Seirus was a real party-in-interest, a petition for *inter partes* review would be barred under § 315(b)." ECF No. 216-9 at 357, 359–60.[5] Columbia initiated the instant lawsuit shortly after. ECF No. 1.

## II.    Procedural Background

### A.    Columbia's Pleadings

On January 29, 2019, Columbia filed its initial Complaint in the instant suit in the District of Oregon. ECF No. 1. Shortly after Columbia filed its Complaint, the PTAB issued a redacted, public version of its order dismissing the Ventex IPRs, prompting

---

[4]    This stay was subsequently lifted. ASAC ¶ 224.  The case is currently stayed for different reasons. *Columbia II*, No. 17-cv-623, ECF No. 72.

[5]    Although Ventex appealed the PTAB's decision to the Federal Circuit, it ultimately moved to voluntarily dismiss this appeal. *Ventex Co. v. Columbia Sportswear N. Am., Inc.*, No. 19-1706 (Fed. Cir.), ECF Nos. 33, 35.

Columbia to file a First Amended Complaint ("FAC") incorporating the PTAB's findings. ECF No. 26; ECF No. 309 at 4.

On April 29, 2019, an interim protective order was entered in this case, which facilitated Columbia's ability to plead additional facts that had been subject to protective orders in *Columbia I* and the Ventex IPRs. ECF No. 85; ECF No. 309 at 5. Consequently, on July 19, 2019, Columbia filed its Second Amended Complaint ("SAC" or the "Operative Complaint") in this case asserting claims for: (1) violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO Act"), 18 U.S.C. § 1962(c), and conspiracy to violate the Federal RICO Act, 18 U.S.C. § 1962(d); (2) violation of the Oregon Racketeer Influenced and Corrupt Organizations Act ("Oregon RICO Act"), Or. Rev. Stat. ("ORS") § 166.720(3), and conspiracy to violate the Oregon RICO Act, ORS § 166.720(4); (3) fraud under Oregon state law; (4) fraud under Virginia state law; (5) civil conspiracy to commit fraud in violation of Virginia Code Annotated § 18.2-499; (6) civil conspiracy to commit fraud under Virginia common law; (7) abuse of process under Virginia law; and (8) exemplary punitive damages. ECF No. 91 ¶¶ 300–458. The SAC named as defendants: Seirus, Ventex, and several Seirus and Ventex executives. *Id.* ¶¶ 12–19.[6]

## B.  Dismissal of the Seirus Defendants

The Seirus Defendants filed four pre-answer motions concerning Columbia's SAC: (1) a motion to dismiss Seirus' in-house attorney, Mr. DeNike, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) a motion filed by the individual Seirus Defendants (joined by Seirus) to dismiss for lack of personal jurisdiction and improper venue; (3) a motion filed by Seirus (joined by the individual Seirus Defendants) to dismiss for failure to state a claim pursuant to Rule 12(b)(6); and (4) a motion to strike

---

[6]    On January 24, 2020, Columbia filed an annotated version of its SAC, which referenced exemplary evidence supporting the SAC's allegations.  ECF Nos. 215, 216. The Court cites the ASAC when referencing Columbia's factual allegations.

Columbia's state law claims under Oregon's Anti-SLAPP Law, ORS § 31.150. ECF Nos. 101, 103, 110, 111. On December 2, 2019, the Court denied all the Seirus Defendants' motions. ECF No. 156.

On February 18, 2020, the Seirus Defendants filed a motion for reconsideration of the Court's denial of their motion to dismiss for lack of personal jurisdiction. ECF No. 254. On April 14, 2020, the Court granted the motion for reconsideration, dismissed the Seirus Defendants, and transferred the remainder of the case to this District. ECF Nos. 299, 300. Because the Order did not specify whether the Seirus Defendants had been dismissed with or without prejudice, Columbia subsequently filed an unopposed, *ex parte* motion to dismiss the Seirus Defendants with prejudice. ECF No. 367 at 3. On April 7, 2023, the Court granted Columbia's motion. ECF No. 368.

## C.   Entry of Default against the Ventex Defendants

As outlined above, only Columbia's claims against the Ventex Defendants remain pending in this case.

Default has now been entered against all the Ventex Defendants. The individual Ventex Defendants—Mr. Park and Mr. Go—have never appeared in this action. Default was accordingly entered against Defendant Park on December 12, 2019, and against Defendant Go on January 9, 2020. ECF Nos. 170, 204. Ventex's counsel appeared in this action on January 6, 2020. ECF No. 195. However, Ventex's counsel moved to withdraw on March 30, 2020, which motion the Court granted the next day. ECF Nos. 289–90. After the withdrawal, Ventex failed to retain replacement counsel. As corporations may not appear *pro se* in this District under Local Civil Rule 83.3(j), on February 9, 2021, the Court ordered Ventex to either obtain substitute counsel, or show cause as to why default should not be entered against it for failure to defend and failure to retain substitute counsel. ECF No. 329 at 2–3. After failing to respond to the Court's order to show cause, default was entered against Ventex on March 10, 2021. ECF Nos. 332, 333.

//

//

### D.      Columbia's Motions for Default Judgment

Columbia's current motion for default judgment is its third filed in this case. On December 12, 2019, Columbia filed its first motion for default judgment against Defendant Park, which it later voluntarily withdrew. ECF Nos. 172, 260.

On April 9, 2021, Columbia filed its second motion for default judgment, this time against the Ventex Defendants. ECF No. 360. Although the Seirus Defendants had already been dismissed, they were granted permission to intervene and file an opposition to Columbia's motion (hereinafter, the "Seirus Opposition"). ECF No. 346. On March 9, 2022, the Court denied Columbia's second motion for default judgment without prejudice under the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552 (1872). ECF No. 361 at 9–11. Columbia and the Seirus Defendants subsequently settled on March 31, 2023. ECF No. 367 at 3. At Columbia's request, the Court then dismissed the Seirus Defendants from this action with prejudice on April 7, 2023. ECF No. 368.

On May 5, 2023, Columbia filed its third motion for default judgment, again against the Ventex Defendants. ECF Nos. 371, 376. While no response was filed, pursuant to the terms of its settlement with the Seirus Defendants, Columbia directed the Court to certain arguments in the Seirus Opposition. ECF No. 376 at 41. The Court considers this matter now fully briefed and ripe for resolution.

### LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application. The entry of default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "First, a party must obtain a clerk's entry of default under Rule 55(a) . . . ." *Verbick v. Movement Tech. Co.*, No. 20-cv-611 TWR-DEB, 2023 WL 4054717, at *1 (S.D. Cal. Mar. 7, 2023) (citation omitted). "The first step, entry of default, is a ministerial matter performed by the clerk and is a prerequisite to a later default judgment." *Faunce v. Martinez*, No. 21-cv-363-MMA-WVG, 2022 WL 17345499, at *2 (S.D. Cal. Nov. 30, 2022) (citation omitted). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the

amount of damages, will be taken as true." *Geddes*, 559 F.2d at 560. Second, upon entry of default, a party must file a motion for default judgment. *Verbick*, 2023 WL 4054717, at *1. Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion. *Eitel*, 782 F.2d at 1471–72.

## ANALYSIS

### I.     Applicability of *Frow*

Before addressing the merits of Columbia's motion for default judgment, the Court first considers whether it still lacks the discretion under *Frow* to enter default judgment against the Ventex Defendants.

The *Frow* decision is the "leading case on the subject of default judgments in actions involving multiple defendants." *In re First T.D. & Inv. Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). Under *Frow*, "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *Id.* (citing *Frow*, 82 U.S. at 554).

Here, the Court previously denied Columbia's prior motion for default judgment because of the risk of inconsistent judgments between the Ventex and Seirus Defendants. ECF No. 361 at 9–11. At the time, the Seirus Defendants had not yet been dismissed from this case with prejudice. *Id.* at 10. Consequently, the liability (or lack thereof) of the Seirus Defendants had not been fully resolved. *Id.*

However, at this current stage of the proceedings, Columbia has settled its claims against the Seirus Defendants and the Court has dismissed the Seirus Defendants with prejudice. ECF Nos. 367, 368. This dismissal constituted a final judgment on the merits as to Columbia's claims against the Seirus Defendants. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("'[F]inal judgment on the merits' is synonymous with 'dismissal with prejudice.'" (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002))). Thus, the Court may enter a default judgment against the Ventex Defendants without the risk of inconsistent judgments between the Ventex and

Seirus Defendants. *See Champion-Cain v. MacDonald*, No. 14-cv-2540-GPC-BLM, 2018 WL 3388095, at *4 (S.D. Cal. July 12, 2018) (holding *Frow* no longer applied after court dismissed non-defaulting defendant); *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (7th Cir. 1980) (noting that "should [plaintiff] elect to dismiss its claim against the answering defendants, with prejudice, the liability of each defendant would be resolved and [plaintiff] could proceed to a determination of damages as to the defaulters immediately.").

As such, the *Frow* doctrine no longer precludes the Court from entering default judgment against the Ventex Defendants.

## II.   Prerequisites to Entering Default Judgment

The Court must also ensure certain procedural prerequisites have been met before entering default judgment against the Ventex Defendants. Specifically, the Court must consider: (1) whether it has subject matter jurisdiction over this action; (2) whether it has personal jurisdiction over the Ventex Defendants; and (3) whether the Ventex Defendants were properly served. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *Tecnologias Avanzadas RD, SRL v. Riegler*, No. 16-cv-6701, 2017 WL 2772301, at *2 (N.D. Cal. June 1, 2017) ("Before the Court considers whether to enter default judgment, it must be satisfied that the procedural prerequisites, including subject matter jurisdiction, personal jurisdiction, and adequate service of process, have been met."). The Court addresses each of these prerequisites below.

### A.   Subject Matter Jurisdiction

To enter default judgment, the Court must have subject matter jurisdiction over this action. In civil actions, federal subject matter jurisdiction exists where: (1) the requirements for diversity jurisdiction are met; or (2) the complaint involves a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required."); *see* 28 U.S.C. §§ 1331–32.

The Court has federal question subject matter jurisdiction over Columbia's Federal RICO claims here. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (holding that district court properly exercised federal question jurisdiction over RICO claims). Because Columbia's remaining state law claims arise from the same common nucleus of facts, the Court also has supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]").

The Court also has diversity jurisdiction over this case. Columbia is a citizen of Oregon. ASAC ¶¶ 11. Defendants are citizens of Utah, California, and the Republic of Korea. *Id.* ¶¶ 12–19. Columbia seeks damages exceeding the $75,000 amount-in-controversy threshold. *Id.* at 104–05. The requirements for diversity jurisdiction are therefore met. *See Canela v. Costco Wholesale Corp.*, 965 F.3d 694, 698 (9th Cir. 2020) ("Traditional diversity jurisdiction requires complete diversity of citizenship and an amount in controversy greater than $75,000." (citing 28 U.S.C. § 1332(a))).

## B. Personal Jurisdiction

The Court next considers whether it may exercise personal jurisdiction over the Ventex Defendants. *See Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973) ("The district court's lack of *in personam* jurisdiction over the appellants renders void its default judgment against them.").

### 1. *Personal Jurisdiction Over Federal RICO Claims*

The Court first looks at whether it may exercise personal jurisdiction over the Ventex Defendants as to Columbia's Federal RICO claims. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant.").

"Federal Rule of Civil Procedure 4(k) governs personal jurisdiction in federal court." *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 921 (9th Cir. 2022). For this Court to

exercise personal jurisdiction over the Ventex Defendants, one of the prongs of Rule 4(k) must apply. Columbia counsels the Court to apply either a Rule 4(k)(1)(A) or 18 U.S.C. § 1965(a) analysis. ECF No. 376 at 21–27. But in its earlier filed motion to dismiss, Ventex argued Rule 4(k)(2) should apply to Columbia's Federal RICO claims. ECF No. 246 at 24. The Court agrees with Ventex and will evaluate personal jurisdiction over the Ventex Defendants under Rule 4(k)(2).[7]

"Rule 4(k)(2) was established 'in response to the Supreme Court's suggestion that the rules be extended to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction.'" *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001)).

---

[7] Although it is not necessary for this Court to address Columbia's arguments based on its disposition below, the Court at least tentatively notes that neither Rule 4(k)(1)(A) nor 18 U.S.C. § 1965(a) appears to be a valid basis for exercising personal jurisdiction over the Ventex Defendants. Under Rule 4(k)(1)(A), the Court would look to the Ventex Defendants' contacts aimed at California specifically, rather than at the United States, as in Rule 4(k)(2). *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). The Seirus Defendants' unilateral decision to reside in California is insufficient grounds to support a claim for jurisdiction over the Ventex Defendants under Rule 4(k)(1)(A). *See Walden v. Fiore*, 571 U.S. 277, 285 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). Furthermore, the harms suffered from the conspiracy and filing of the stay under false pretenses occurred in Oregon and Virginia, not California. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017) ("Harm suffered in the forum state is a necessary element in establishing purposeful direction.").

As for 18 U.S.C. § 1965(a), the statute provides that a RICO action may be brought in any district in which the defendant "resides, is found, has an agent, or transacts his affairs." Despite Columbia's suggestion, 18 U.S.C. § 1965(a) is more commonly construed as a venue statute, not a statute that confers personal jurisdiction. *See, e.g.*, *Doe v. Walmart Inc.*, No. 18-cv-2125, 2019 WL 499754, at *7 (N.D. Cal. Feb. 8, 2019) ("[C]ourts have found that § 1965(a) does not confer jurisdiction and is instead a venue statute.").

Rule 4(k)(2) has three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).

The first requirement is easily satisfied as to Columbia's Federal RICO claims.

The second requirement is also sufficiently met as to Ventex and the individual Ventex Defendants. Ventex previously represented it was not subject to the personal jurisdiction of Oregon or any other state with respect to Columbia's federal claims. ECF No. 246 at 24. Therefore, a Rule 4(k)(2) analysis is appropriate. *See Holland*, 485 F.3d at 461 ("If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."); *see also Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) (analyzing personal jurisdiction under 4(k)(2) where Vietnamese corporation argued it was "not subject to personal jurisdiction in any state's courts of general jurisdiction."). Although it is unclear if Defendants Park or Go are subject to the personal jurisdiction of any state's courts of general jurisdiction, their refusal to participate in this litigation has deprived Columbia of the opportunity to discover such information. The Court need not "traipse through the 50 states, asking whether each could entertain the suit." *Holland*, 485 F.3d at 461 (quoting *ISI Int'l*, 256 F.3d at 552). Instead, "absent any statement from either" Defendants Park or Go conceding they are "subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Id.* at 462; *see Talavera Hair Prods. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-cv-823-JLS-JLB, 2021 WL 3493094, at *9 (S.D. Cal. Aug. 6, 2021) (analyzing jurisdiction under Rule 4(k)(2) where "no Defaulted Defendant contend[ed] that it [was] subject to personal jurisdiction in any other state[.]").

20-cv-709-RSH-JLB

The third requirement asks whether it would comport with due process for the Ventex Defendants to be subject to a court in the United States. Under the traditional personal jurisdiction analysis, "due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Ninth Circuit has established a "three-prong test" to determine if a district court can exercise specific personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The due process analysis the Court undertakes under Rule 4(k)(2) is "nearly identical" to the "traditional personal jurisdiction analysis with one significant difference"—rather than considering the Ventex Defendants' contacts with California, the Court considers their contacts with the United States as a whole. *Holland*, 485 F.3d at 462. With this in mind, the Court applies the three-prong test below.

### a.    Prong One: Purposeful Direction

The first prong requires Columbia to show the Ventex Defendants either purposefully availed themselves of the privilege of conducting activities in the United States, or purposefully directed their activities toward the United States. *Schwarzenegger*,

374 F.3d at 802. Availment and direction are "two distinct concepts." *Id.* The analysis the Court undertakes "depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Because Columbia's Federal RICO Act and state law claims sound in tort, a purposeful direction analysis is more appropriate here. *See, e.g.*, *Munderloh v. GmbH*, No. 21-cv-8004, 2022 WL 901408, at *3 (D. Ariz. Mar. 28, 2022) ("Because RICO claims are torts, the purposeful direction analysis is appropriate."); *Naghavi v. Belter Health Measurement & Analysis Tech. Co.*, No. 20-cv-1723-H-KSC, 2021 WL 461725, at *4 (S.D. Cal. Feb. 9, 2021) (analyzing fraud claim under purposeful direction test).

"[A] defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot*, 780 F.3d at 1213 (quoting *Schwarzenegger*, 374 F.3d at 803); *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020). All factors demonstrate purposeful direction here.

The Ventex Defendants committed an intentional act. An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Here, Columbia's federal claims arise from its allegation that the Ventex Defendants colluded with the Seirus Defendants to perpetuate a fraud on Columbia, the District of Oregon, and the PTAB. ASAC ¶¶ 300–42. The "principal" instrument of this scheme was the IPR Funding Contract, which Defendant Go entered on Ventex's behalf, and which identifies Defendant Park as the individual to receive any notices required by the agreement. ASAC ¶¶ 82–85; ECF No. 216-7 at 2–3. Columbia further alleges Defendant Park hid the existence of the conspiracy and corresponded with Defendant Murphy to secure the payments Seirus

16

would make to Ventex to litigate the IPRs, until the IPR Funding Contract was discovered. ASAC ¶¶ 6, 39–40, 177–99, 236–84, 285–293. By deliberately engaging in these physical acts, the Ventex Defendants committed "intentional acts."

The Ventex Defendants also clearly aimed their conduct at the United States. Columbia alleges the Ventex and Seirus Defendants jointly conceived of and implemented a plan to litigate fraudulent proceedings before a U.S. governmental body, to delay a trial in a U.S. District Court, in order to harm a U.S. corporation. ASAC ¶¶ 1– 10, 82–93, 132–64. "'In sum, [the United States] was the focal point of [Defendants' Scheme] and of the harm suffered.'" *Walden*, 571 U.S. at 287 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)).

Finally, the Ventex Defendants caused harm likely to be suffered in the United States. The claimed injuries here include the funds Columbia expended to: (1) litigate the Ventex IPRs; (2) discover the IPR Funding Contract; and  (3) oppose the stays in *Columbia I* and *Columbia II*. ASAC ¶¶ 294–99. The Ventex Defendants knew (or reasonably should have known) that these injuries would primarily be suffered in the United States—where Columbia, the District of Oregon, and the PTAB are all located. *See Wash. Shoe*, 704 F.3d at 679 (where defendant "knew or should have known" the impact of its actions would cause harm likely to be suffered in the forum, defendant could "reasonably anticipate being haled into court" in the forum).

In sum, Columbia has demonstrated a *prima facie* case that the Ventex Defendants purposefully directed their conduct towards the United States.

b.    *Prong Two: Relation to Defendants' Forum-Related Activities*

The second prong of the personal jurisdiction analysis asks if plaintiff's claim "relate to the defendant's contacts with the forum." *Yamashita v. LG Chem, Ltd.*, 48 F.4th 993, 998 (9th Cir. 2022) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). Here, the Ventex Defendants' forum-related activities are alleged to be their decision to enter into an agreement with the Seirus Defendants to file and litigate

1  fraudulent IPR petitions in the United States. ASAC ¶¶ 1–10, 25–26, 34, 39. Therefore,

2  Columbia's claims relate to the Ventex Defendants' forum-related activity.

3              *c.      Prong Three: Fair Play and Substantial Justice*

4          The final prong of the personal jurisdiction analysis asks whether the Court's

5  exercise of jurisdiction over a nonresident defendant comports "with fair play and

6  substantial justice," i.e., whether it is "reasonable." *Schwarzenegger*, 374 F.3d at 802.

7  Seven factors guide this analysis:

> (1) the extent of the defendants' purposeful interjection into the
> forum state's affairs; (2) the burden on the defendant of
> defending in the forum; (3) the extent of conflict with the
> sovereignty of the defendants' state; (4) the forum state's
> interest in adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the importance of the
> forum to the plaintiff's interest in convenient and effective
> relief; and (7) the existence of an alternative forum.

14 *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Importantly,

15 the burden is on the Ventex Defendants to "present a compelling case" that the exercise

16 of jurisdiction would be unreasonable—a burden they have not met. *Id.* at 1487.

17         As Defendants Park and Go have never appeared in this action, they have not

18 presented a compelling case that the exercise of personal jurisdiction over them would be

19 unreasonable. *See Talavera*, 2021 WL 3493094, at *10 ("Given that the Defaulting

20 Defendants have failed to appear in this action, they have not presented a compelling case

21 that the exercise of personal jurisdiction would be unreasonable[.]"); *Facebook, Inc. v.

22 Banana Ads LLC*, No. 11-cv-3619, 2013 WL 1873289, at *5 (N.D. Cal. Apr. 30, 2013)

23 (finding non-resident defaulting defendants waived their opportunity to make an

24 unreasonableness showing by failing to participate in the litigation). While Ventex *did*

25 appear in this action prior to defaulting, Ventex never contended this Court's exercise of

26 personal jurisdiction over it as to Columbia's federal claims would be unreasonable. To

27 the contrary, Ventex conceded personal jurisdiction in this District were national contacts

28 to be found under Rule 4(k)(2). ECF No. 246 at 24.

Finally, the exercise of personal jurisdiction over the Ventex Defendants would be unfair or unjust. Here, the Ventex Defendants interjected themselves into the United States by targeting a U.S. company through a proceeding before a U.S. government agency. *See Cloudclinic LLC v. TheraPetic Sol., Inc.*, No. 17-cv-1293-JLS-NLS, 2018 WL 9538569, at *4 (S.D. Cal. May 21, 2018) (finding exercise of personal jurisdiction reasonable where defendant interjected itself into California by targeting a California company); *Bittorrent, Inc. v. Bittorrent Mktg. GmbH*, No. 12-cv-2525, 2014 WL 5773197, at *7 (N.D. Cal. Nov. 5, 2014) (same). While the Court recognizes there is some burden imposed on foreign residents defending lawsuits in the United States, this factor has "minimal relevance" where the defaulted defendants "have failed to appear and defend in this action." *See Talavera*, 2021 WL 3493094, at *11. There does not appear to be a conflict with the sovereignty of the Ventex Defendants' state (the Republic of Korea), as the alleged violations concern a conspiracy to defraud a U.S. company using proceedings before a U.S. government agency. On the other hand, the United States has a strong interest in both its companies and administrative bodies. As this case has been pending in the United States for over five years, the most efficient judicial resolution of the controversy also favors this Court's exercise of personal jurisdiction. The fact that Columbia is in the United States and the alleged injury occurred here further weighs in favor of exercising jurisdiction here. Finally, the Ventex Defendants have not identified any other forum in which Columbia would be able to adjudicate the present dispute. To the contrary, as noted above, Ventex conceded personal jurisdiction in this District. ECF No. 246 at 24.

Accordingly, the Court finds its exercise of personal jurisdiction over the Ventex Defendants, as to Columbia's Federal RICO claims under Rule 4(k)(2), comports with due process.

### 2.    *Pendent Jurisdiction Over Remaining State Law Claims*

Having established it has personal jurisdiction over the Ventex Defendants with respect to Columbia's Federal RICO claims, the Court finds it can exercise pendent

personal jurisdiction over Columbia's remaining claims. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery*, 368 F.3d at 1180. "[T]he actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court." *Id.* at 1181.

Here, Columbia's remaining state law claims all involve the same common nucleus of operative facts arising from the Ventex IPRs as its Federal RICO claims. ASAC ¶¶ 343–458. The Court's exercise of pendent personal jurisdiction is, therefore, appropriate under these circumstances. *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 705 (C.D. Cal. 2022) (exercising pendent personal jurisdiction over state law claims where "a common nucleus of operative facts between these claims and those advanced under RICO.").

## C.   Service of Process

Additionally, the Court considers whether the Ventex Defendants were properly served. *See Folkmanis, Inc. v. Uptown Toys LLC*, No. 18-cv-955, 2018 WL 4361140, at *2 (N.D. Cal. Sep. 13, 2018) ("In deciding whether to grant or deny default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit." (citation omitted)).

Here, the question of whether Ventex (the corporation) and Defendants Park and Go (the individuals) were properly served has a common starting point. Federal Rule of Civil Procedure 4(h)(2) and (f) sets forth the procedural requirements for service of process in a foreign country. Rule 4(f) governs the requirements for service of process on an individual in a foreign country, while Rules 4(f) and (h)(2) govern service of process on a foreign corporation. Specifically, Rule 4(h)(2) directs that service on a foreign

corporation, if done outside of the United States, shall be effectuated "in any manner prescribed by Rule 4(f) for serving an individual," except personal delivery. Fed. R. Civ. P. 4(h)(2). Under Rule 4(f)(1), service may be accomplished on a foreign individual "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" Fed R. Civ. P. 4(f)(1).

The Republic of Korea and the United States are members of the Hague Conference. *See* Hague Conference, *HCCH Members*, HCCH, https://www.hcch.net/en/states/hcch-members [https://perma.cc/52XL-T6NF] (last visited Sept. 7, 2023). Specifically, the Republic of Korea and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361 (1965) ("Hague Service Convention"),[8] which the Court relies on to determine whether the Ventex Defendants were properly served. *See Catalyst Lifestyle Ltd. v. Elago Co.*, No. 22-cv-536-LL-MDD, 2022 WL 16951656, at *2 (S.D. Cal. Nov. 15, 2022) ("The Republic of Korea is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters . . . ."); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies.").

The Hague Service Convention provides a two-step process for serving individuals located outside the United States. First, the party attempting service must request service from the foreign state's "Central Authority," an entity designated by the foreign state "which will undertake to receive requests for service[.]" Hague Service Convention, ch.

---

[8]    *See* Hague Conference, *Conventions & Other Instruments*, HCCH, https://www.hcch.net/en/instruments/conventions [https://perma.cc/7JTH-45M2] (last visited Sept. 7, 2023).

1, art. 2. Second, the Central Authority shall arrange to have the documents served either: (1) "by a method prescribed by [that state's] internal law"; or (2) "by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." *Id.*, ch. 1, arts. 5(a) and (b). "If the documents comply with applicable requirements, the Convention affirmatively requires the Central Authority to effect service in its country." *Brockmeyer*, 383 F.3d at 801.

Following service on a party in the foreign state, the Central Authority "shall complete a certificate" which "shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." Hague Service Convention, ch. 1, art. 6. Thereafter, the certificate "shall be forwarded" to the party requesting service. *Id.* "[A] signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).

With this common starting point as guidance, the Court turns to whether each of the Ventex Defendants were properly served.

### 1.  *Ventex*

Here, the record indicates Ventex was properly served with Columbia's SAC under the Hague Service Convention. On November 18, 2019, Columbia transmitted Korean and English versions of its SAC, the summons to its SAC, and supporting documents to the Republic of Korea's Central Authority to be served on Ventex. ECF Nos. 284 at 2, 284-1 at 4. On February 10, 2020, the Central Authority served Ventex through one of its employees, Jiyun Kim, an "office worker (general clerk)" at Ventex's offices located at Sampyeong-dong, Rich Together Center, 2nd Floor, 14 Pangyoyeok-ro 192beon-gil, Bundang-gu, Seongnam. ECF Nos. 284 at 3, 284-1 at 1–2. A certificate of service was issued by the Suwon District Court Seongnam Branch Court on February 18, 2020, signed by the Court Clerk. ECF No. 284-1 at 2. This certificate is *prima facie* evidence of valid service. *See SEC*, 509 F.3d at 1163; *Oak Point Partners, Inc. v. Lessing*, No. 11-cv-

3328, 2012 WL 4121109, at *3 (N.D. Cal. Sept. 18, 2012) (holding German company was properly served under Hague Service Convention in light of "facially valid certificate from the German Central Authority").

## 2.    Defendant Park

The record indicates Defendant Park was also properly served. On March 21, 2019, Columbia transmitted Korean and English versions of its FAC, the summons to its FAC, and supporting documents to the Republic of Korea's Central Authority to be served on Defendant Park. ECF No. 159 at 4. On May 7, 2019, the Central Authority served Defendant Park at Jamsil-dong, Gumsuk Building, 2-5F. 6-15 Baekiaegobunro 7-gil. Songpa-gu. Seoul, through a "clerk" working at the building. *Id.* at 10. A certificate of service was issued by the Seoul Eastern District Court on May 27, 2019, signed by the Clerk of Court. *Id.* Again, this certificate is *prima facie* evidence of valid service. *See SEC*, 509 F.3d at 1163; *Oak Point Partners*, 2012 WL 4121109, at *3.

This does not, however, end the Court's inquiry, as Columbia did not submit evidence confirming Defendant Park was served with Columbia's SAC. Instead, Columbia argues it is not required to do so because its SAC alleges no new claims against Defendant Park, a defaulting party. ECF No. 376 at 19–20.

Under Federal Rule of Civil Procedure 5(a)(2), "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). A plaintiff, therefore, need only serve an amended complaint against a party in default when the amended complaint adds new claims for relief. *See Emp. Painters' Tr. v. Ethan Enters.*, 480 F.3d 993, 999 (9th Cir. 2007); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13-cv-1395-GPC-BLM, 2014 WL 6810663, at *3 (S.D. Cal. Dec. 2, 2014) ("While adding new claims require service under Rule 4, the addition of new factual allegations do not.").

Here, Columbia filed its SAC on July 19, 2019 [ECF No. 91], over a month after Defendant Park had been served with Columbia's FAC [ECF No. 159 at 10]. At the time Columbia filed its SAC, Defendant Park had not appeared to defend this action, and was

23

therefore in default. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (stating a defendant must serve an answer within 21 days after being served with summons and complaint); *see also Applied Med. Distrib. Corp. v. AH Sung Int'l, Inc.*, No. 14-cv-1900, 2016 WL 7626475, at *2 (C.D. Cal. June 2, 2016) (finding Korean defendant's response due within 21 days after being served by Republic of Korea's Central Authority).[9]

From the Court's review, Columbia's SAC asserts no new causes of action against Defendant Park that were not asserted in Columbia's FAC. *Compare* ECF No. 26, *with* ECF No. 91. Because Defendant Park was already in default, the Court concludes it was unnecessary for Defendant Park to be served with Columbia's SAC.

### 3. *Defendant Go*

Finally, the record indicates Columbia sufficiently attempted to serve Defendant Go via the Hague Service Convention and other alternative methods of service. On March 21, 2019, Columbia transmitted Korean and English versions of its FAC, the summons to its FAC, and all supporting documents to the Republic of Korea's Central Authority to be served on Defendant Go. ECF No. 180-6 at 1. A certificate of service issued by the Seoul Eastern District Court indicates the Central Authority attempted to serve Defendant Go on May 15, 2019, at Gumsuk Building, 2-5F, 6-15 Baekiaegobunro 7-gil, Songpa-gu, Seoul, but the clerk present refused to receive Columbia's documents. ECF No. 180-10 at 1.[10]

On August 14, 2019, Columbia again transmitted Korean and English versions of its SAC, the summons to its SAC, and all related documents to the Republic of Korea's Central Authority to the same address. ECF No. 180-12 at 1. On December 16, 2019, the

---

[9]   Although default was not technically entered on Defendant Park until December 12, 2019, "[a] party is in default as soon as he or she fails to timely file the required pleading, not when the Clerk of Court has entered the default." *MKay, Inc. v. City of Huntington Park*, No. 17-cv-1467, 2017 WL 10574460, at *3 (C.D. Cal. Aug. 21, 2017).
[10]   This address is the same address where Defendant Park was successfully served. ECF No. 159 at 10.

24

Court further authorized Columbia to use the following alternate methods of service on Defendant Go in this case: (1) U.S. mail to Ventex's lead counsel on the Ventex IPRs; (2) U.S. mail to Ventex's counsel on *Columbia II*; and (3) e-mail per the address advertised on Ventex's website. ECF No. 178 at 13; ECF No. 184.[11] Defendant Go was served the SAC via these alternative methods of service on December 18, 2019. ECF No. 192 at 2. In light of the above, the Court finds Columbia has fully complied with its prior service order and the requirements of Rule 4.

## III. Entry of Default Judgment

Having determined the prerequisites for entering default judgment have been met, the Court turns to the merits of Columbia's motion.

The decision to grant or deny default judgment lies within the discretion of the district court. *Eitel*, 782 F.2d at 1471. The Ninth Circuit has enumerated seven factors— known as the *Eitel* factors—that a court may consider when exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. The Court addresses each of the *Eitel* factors below.

### A. Factor I: Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. Here, given the Ventex Defendants' failure to defend this action,

---

[11] Courts have routinely authorized serving foreign defendants through their attorneys. *See Carrico v. Samsung Elecs. Co.*, No. 15-cv-2087, 2016 WL 2654392, at *5 (N.D. Cal. May 10, 2016) (authorizing service Korean defendant through her attorney under Rule 4(f)(3)); *Richmond Techs., Inc. v. Aumtech Bus. Sols.,* No. 11-cv-2460, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3).").

Columbia would likely be without recourse against them absent default judgment. The first *Eitel* factor, therefore, weighs in favor of granting default judgment. *See, e.g.*, *Talavera*, 2021 WL 3493094, at *11 (granting default judgment where defaulted defendants failed to participate leaving plaintiff likely without other recourse); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (granting default judgment as defendant's "unwillingness to cooperate and defend" left plaintiff without other recourse).

### B.    Factors II and III: Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors focus on the sufficiency of a plaintiff's complaint. "To warrant entering a default judgment, a complaint's allegations must be sufficient to state a claim upon which relief can be granted." *Talavera*, 2021 WL 3493094, at *11 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). A complaint satisfies this standard when the claims cross the "line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citation omitted). "A party seeking default judgment bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Verbick*, 2023 WL 4054717, at *2 (citation omitted).[12]

### 1.    Claim 1, Count 1—Substantive Federal RICO Act Claim

The Federal RICO Act creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). In turn, section 1962(c) makes it "unlawful for any person employed

---

[12]    The Court already conducted a detailed analysis and found the claims in Columbia's SAC to be sufficiently pleaded in its December 2, 2019, Order. ECF No. 156 at 18–25. Although the Court performs its own independent analysis for this order, it accords "law of the case" deference to its prior rulings.

by or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" *Id.*

To state a substantive cause of action under the Federal RICO Act, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted). Here, Columbia alleges the Ventex Defendants formed a RICO enterprise with the Seirus Defendants for the common purpose of defrauding Columbia, the PTAB, and the District of Oregon by committing multiple instances of mail and wire fraud in violation of 18 U.S.C. § 1962(c). ASAC ¶¶ 304–33. The Court considers whether Plaintiff adequately pleaded each of the elements of a RICO claim below.

### a. Enterprise

To establish liability under § 1962(c) of the Federal RICO Act, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4).

In this case, Columbia alleges the existence of a "Seirus Enterprise," consisting of the Ventex and Seirus Defendants, a group of persons associated-in-fact. ASAC ¶ 312. An associated-in-fact enterprise is defined as "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). An associated-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity

27

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Here, the Court finds Columbia has sufficiently pleaded the existence of an associated-in-fact enterprise. According to Columbia, the Ventex and Seirus Defendants formed an enterprise with the "common purpose of intentionally and willfully defrauding" Columbia, the PTAB, and the District of Oregon by engaging in a continuing course of conduct to file and litigate two fraudulent IPR petitions "with the express purpose of using the Ventex IPRs to stay" the *Columbia I* action "on the eve of trial" to prevent Columbia from collecting a financial judgment. ASAC ¶ 313. The ASAC includes detailed allegations of the specific acts committed by each of the Ventex and Seirus Defendants in furtherance of this common purpose and the relationships amongst the members of the Seirus Enterprise. *Id.* ¶¶ 82–284. For example, Columbia details the mechanisms the Defendants used to transfer funds from Seirus and Ventex while disguising Seirus' involvement. *Id.* ¶¶ 82–93. Columbia also alleges a longevity sufficient to allow the members of the Seirus Enterprise to pursue its common purpose, covering over two years of continuing conduct by the Seirus and Ventex Defendants. *Id.* ¶¶ 82–284. This is sufficient to show that the Ventex and Seirus Defendants functioned as a continuing unit. *See Odom*, 486 F.3d at 553 (finding two-year lifespan "far more than adequate" to show defendants functioned as continuing unit).

### b.  *Racketeering Activity*

A RICO claim must adequately plead at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5) (a "'pattern of racketeering activity' requires at least two acts of racketeering activity"). In this case, Columbia claims predicate acts of mail and wire fraud. ASAC ¶ 325.

"The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements:" (1) "the formation of a scheme to defraud"; (2) "the use of the mails or wires in furtherance of that scheme"; and (3) "the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*,

751 F.3d 990, 997 (9th Cir. 2014); *see* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). RICO mail and wire fraud claims must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b). *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *Beaver v. Omni Hotels Mgmt. Corp.*, No. 20-cv-191-AJB-KSC, 2021 WL 1174719, at *6 (S.D. Cal. Mar. 29, 2021) ("Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to predicate acts involving fraud."). To satisfy this standard, a plaintiff must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066 (citation omitted).

Here, Columbia alleges multiple predicate instances of mail and wire fraud, including outlining the "who, what, where, when, and how" of each misrepresentation. ASAC ¶ 325; ECF No. 216 at 119–34. Columbia contends the wire transfers and mailings were sent as part of a common scheme to defraud Columbia, the PTAB, and the District of Oregon. ASAC ¶ 325. Columbia also sufficiently alleges how each of the alleged mailings and wire transfers was in furtherance of this scheme by being, at minimum, "incidental" to its execution. *See United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (holding that a wire communication or mailing is "in furtherance of a fraudulent scheme if it is incident to the execution of the scheme, meaning that it need not be an essential element of the scheme, just a step in the plot[.]" (internal quotation marks and citation omitted). For example, Columbia alleges how the alleged mailings and wire transfers were either used: (1) to set up the means to commit the scheme, such as through the execution of the IPR Funding Contract; or (2) to implement the scheme, such as through the filing and service of documents in the Ventex IPR and *Columbia I* proceedings. ASAC ¶ 325; ECF No. 216 at 119–34. Finally, by pleading "the existence of a plausible fraudulent scheme," Columbia has adequately pleaded specific intent. *Eclectic*, 751 F.3d at 997. For the above reasons, the Court finds Columbia has sufficiently pleaded at least two predicate instances of mail/wire fraud.

//

1           *c.*    *Pattern*

2         A valid RICO claim must allege a "pattern of racketeering." 18 U.S.C. § 1961(5).

3    To establish a RICO pattern, the predicate acts must be both "related" and "continuous."

4    *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989). There are two kinds of

5    continuity that can meet the RICO "pattern" requirement: close-ended and open-ended

6    continuity. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995).

7         The Court finds Columbia's allegations here are sufficient to satisfy the close-

8    ended continuity requirement. "Closed-ended continuity refers to a closed period of

9    repeated conduct. It is established by showing that the predicate acts occurred over a

10   substantial period of time." *Id.* Under Ninth Circuit precedent, "a plaintiff properly pleads

11   a RICO pattern where it alleges multiple predicate acts against multiple victims over a

12   significant period of time[.]" *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt.*

13   *Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988). "RICO's continuity requirement does not

14   require multiple criminal schemes in the commission of the predicate acts, but that

15   continuity may be established with predicate acts that are part of a single scheme."

16   *Allwaste*, 65 F.3d at 1528. Instead, "proof of a single scheme can be sufficient so long as

17   the predicate acts involved are not isolated or sporadic." *Turner v. Cook*, 362 F.3d 1219,

18   1229 (9th Cir. 2004).

19        Here, Columbia alleges the Seirus Enterprise came into existence as early as

20   October 2016, when the Seirus and Ventex Defendants entered the IPR Funding Contract,

21   and lasted until at least January 24, 2019, when the PTAB dismissed the Ventex IPRs.

22   ASAC ¶¶ 84, 285, 311; ECF No. 216-7 at 1. This span of time satisfies the continuity

23   requirement. *See Allwaste*, 65 F.3d at 1528 (finding that a thirteen-month period spanned

24   a "substantial period of time" and therefore would satisfy the continuity requirement).

25        Columbia further alleges multiple predicate acts occurring during this time period,

26   including: (1) the filing and service of the Ventex IPRs; (2) the filing of related motions

27   in the District of Oregon seeking to stay the *Columbia I* action; (3) e-mail and telephone

28   communications between the Ventex Defendants to implement this scheme; and (4)

payments made from Seirus to Ventex, and then from Ventex to its legal counsel, to finance the scheme. ASAC ¶ 325; ECF No. 216 at 119–34. This activity was aimed at multiple victims, including Columbia, the PTAB, and the District of Oregon. Although these acts were arguably all executed in furtherance of a single scheme—to delay the *Columbia I* litigation and prevent Columbia from collecting a financial judgment—the predicate acts in question were neither isolated nor sporadic.

In sum, the Court finds Columbia's allegations of multiple predicate acts with multiple targets in furtherance of a single scheme, combined with the span of time during which the Ventex and Seirus Defendants conducted their scheme, are sufficient to plead close-ended continuity to meet RICO's "pattern" requirement.

### d.   Injury

Finally, a plaintiff in a Federal RICO action must plausibly allege: (1) an injury to "business or property," that is (2) "by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Here, Columbia alleges that because of the actions undertaken by the Seirus Enterprise, it has had to expend funds to: (1) defend the Ventex IPRs; (2) propound discovery on the relationship between Ventex and Seirus; and (3) respond to motions filed by Ventex and Seirus to stay the *Columbia I* and *Columbia II* actions pending a resolution of the Ventex IPRs. ASAC ¶¶ 294–99.

"'Whether incurring legal fees constitutes an injury to a plaintiff's 'business or property' is a question as yet unanswered by the Ninth Circuit.'" *In re Outlaw Lab., LP Litig.*, No. 18-cv-840-GPC-BGS, 2020 WL 1953584, at *9 (S.D. Cal. Apr. 23, 2020) (quoting *Dunmore v. Dunmore*, No. 11-cv-2867, 2013 WL 5569979, at *6 (E.D. Cal. Oct. 8, 2013)); *see Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009) ("This court has not recognized the incurment of legal fees as an injury cognizable under RICO."). Nevertheless, in line with the decisions of other district courts in the Ninth Circuit, the Court finds the damages Columbia alleges it suffered are sufficient to plead a RICO injury.

Here, Columbia incurred its attorneys' fees fighting the fraudulent IPRs initiated by the Ventex Defendants, i.e., "the very wrongful conduct that comprised the RICO claim." *In re Outlaw*, 2020 WL 1953584, at \*9 (finding fees incurred settling sham lawsuits recoverable under RICO). Courts in the Ninth Circuit have found legal fees to be recoverable under RICO under similar facts. *See, e.g.*, *Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. 16-cv-614, 2019 WL 4194306, at \*7 (C.D. Cal. July 2, 2019) (finding legal fees to be recoverable under RICO); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085 n.33 (C.D. Cal. 2008) ("Attorneys fees and legal expenses incurred in other proceedings which are proximately caused by a RICO defendant's wrongful conduct may be cognizable injuries under RICO.") (collecting cases).

This conclusion is also consistent with the decisions of other U.S. Courts of Appeals. *See Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) (holding attorneys' fees incurred in objecting to fraudulent claims, "if proven at trial, qualifies as an injury to business or property that was proximately caused by a predicate act of racketeering."); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) ("Legal fees may constitute RICO damages when they are proximately caused by a RICO violation.").

## 2. *Claim 1, Count 2—Federal RICO Conspiracy Claim*

Columbia alleges the Ventex Defendants also conspired with the Seirus Defendants to violate RICO, which is in itself a violation of the Federal RICO Act. ASAC ¶¶ 334–42. Specifically, the Federal RICO Act makes it "unlawful for any person to conspire to violate" any of the provisions of the RICO Act, including § 1962(c). 18 U.S.C. § 1962(d). "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Here, because the Court has already found that Columbia adequately pleaded its substantive RICO claim under 18 U.S.C. § 1962(c) and further alleged a conspiracy to

violate 18 U.S.C. § 1962(c), the Court finds Columbia has adequately pleaded its RICO conspiracy claim under § 1962(d). *See, e.g.*, *MH Pillars Ltd. v. Realini*, No. 15-cv-1383, 2018 WL 1184847, at *8 (N.D. Cal. Mar. 7, 2018) (finding that plaintiff had adequately pleaded RICO conspiracy claim where plaintiff adequately pleaded a substantive RICO claim); *Waldrup v. Countrywide Fin. Corp.*, No. 13-cv-8833, 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015) (same).

### 3. Claim 2, Counts 1 and 2—Oregon RICO Act

Columbia also asserts claims under the Oregon RICO Act for violations of ORS § 166.720(3)–(4). ASAC ¶¶ 343–86. The Oregon RICO Act is modeled after the Federal RICO Act. *See Acro-Tech, Inc. v. Robert Jackson Family*, 76 F. App'x 216, 217 (9th Cir. 2003) ("Oregon's RICO is modeled after the federal statute."); *Phillips v. Lithia Motors, Inc.*, No. 3-cv-3109, 2006 WL 1113608, at *5 (D. Or. Apr. 27, 2006) ("The elements for RICO and Oregon RICO are essentially the same and thus the two statutes are interpreted consistently."); *Acro-Tech, Inc. v. Robert Jackson Family Tr.*, No. 1-cv-447, 2001 WL 1471753, at *7 (D. Or. Sept. 6, 2001) ("Oregon RICO, ORS 166.715-166.735, is modeled after the federal statute."). ORS § 166.720(3) parallels 18 U.S.C. § 1962(c). *Compare* ORS § 166.720(3), *with* 18 U.S.C. § 1962(c). Similarly, ORS § 166.720(4) parallels 18 U.S.C. § 1962(d). *Compare* ORS § 166.720(4), *with* 18 U.S.C. § 1962(d). As the Court noted in its prior December 2, 2019, Order, the "primary differences" between the Federal RICO Act and Oregon's RICO Act "inure to Columbia's benefit" here. ECF No. 156 at 22.[13] Consequently, because the Court has already found that Columbia sufficiently pleaded its claims under the Federal RICO Act, the Court also finds Columbia has sufficiently pleaded its claims under the Oregon RICO Act.

---

[13] For example, "[u]nlike the federal RICO statute, [the Oregon RICO Act] does not require continuity." *Altamont Summit Apartments LLC v. Wolff Props. LLC*, 1-cv-1260, 2002 WL 926264, at *15 (D. Or. Feb. 13, 2002).

### 4.   Claims 3 and 4—Fraud (Oregon and Virginia State Law)

The Court also finds Columbia has sufficiently set forth plausible claims for fraud under both Oregon and Virginia state law. To establish a fraud claim under Oregon law, a plaintiff must plead and prove that: "the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins.* Co., 350 Or. 336, 352 (2011). Similarly, to establish a fraud claim under Virginia law, a plaintiff must plead and prove: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367 (2003).

Here, Columbia's allegations satisfy each of the elements of both state's laws. Columbia alleges the Ventex Defendants intentionally concealed the fact that Seirus was a real party-in-interest to the Ventex IPRs from Columbia, the PTAB, and the District of Oregon. ASAC ¶ 388. According to Columbia, these misrepresentations were material because Seirus was statutorily time-barred from being a real party-in-interest to the Ventex IPRs. For these reasons, had the fact that Seirus was financing the Ventex IPRs been disclosed, the Ventex IPRs would not have been instituted. *Id.* ¶ 393. Columbia, the PTAB, and the District of Oregon are then alleged to have relied on these misrepresentations in considering the Ventex IPRs and requests to stay in *Columbia I* and *Columbia II. Id.* ¶¶ 394–96, 403–05. Columbia further alleges it relied on these misrepresentations to its detriment by expending at least $700,000 litigating the Ventex IPRs and requests to stay. *Id.* ¶¶ 294–99, 408. The Court finds these allegations adequately state causes of action for fraud under both Oregon and Virginia law.

### 5.   Claims 5 and 6—Civil Conspiracy to Commit Fraud (Virginia Law)

Columbia has also sufficiently pleaded plausible claims for civil conspiracy under Virginia Code Annotated § 18.2-499 and Virginia common law. To state a claim for a

violation of Virginia Code Annotated § 18.2-499, a plaintiff must allege: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiff's business, and (2) resulting damage to the plaintiff." *Tang v. E. Va. Med. Sch.*, No. 20-cv-575, 2021 WL 2916714, at *8 (E.D. Va. July 12, 2021) (citation omitted). Similarly, the elements of a common law civil conspiracy claim in Virginia are: (1) "an agreement between two or more persons"; (2) "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which"; (3) "results in damage to plaintiff." *Id.* "[A]ctions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014).

Here, the Court has already found that Columbia sufficiently pleaded: (1) a plausible claim for fraud under Virginia law; and (2) that the Ventex and Seirus Defendants formed an enterprise with the common purpose of defrauding Columbia, the PTAB, and the District of Oregon. For the same reasons, the Court finds Columbia has also sufficiently pleaded plausible civil conspiracy to commit fraud claims under Virginia statutory and common law. *See Witcher v. Reid*, 70 Va. Cir. 415, 419–21 (Cir. Ct. 2006) (overruling demurrer on civil conspiracy to commit fraud claim where plaintiff sufficiently alleged underlying actual fraud claim, agreement to commit fraud, and damage).

### 6.   *Claim 7—Abuse of Process (Virginia Law)*

Columbia has not, however, met its burden of showing it sufficiently alleged an abuse of process claim under Virginia law. In Virginia, "[a]buse of process involves the wrongful use of process after it has been issued. The essential elements of an abuse of process claim are (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Triangle Auto Auction, Inc. v. Cash*, 238 Va. 183, 184 (1989) (citation omitted).

Here, the crux of Columbia's abuse of process claim, like its other claims, centers on Columbia's allegations the Ventex Defendants intentionally omitted the fact that Seirus was a real party-of-interest when filing the Ventex IPRs. ASAC ¶¶ 445–51. However, under Virginia law, "[a] misrepresentation is not a regularly-issued process which is used improperly to accomplish some ulterior purpose for which the procedure was not intended." *7600 Ltd. P'ship v. QuesTech, Inc.*, 39 Va. Cir. 268, 271 (Cir. Ct. 1996) (citation omitted); *see Aldrich v. Old Point Nat'l Bank*, 35 Va. Cir. 545, 554 (Cir. Ct. 1993) (finding allegations defendant "obtained a distress warrant and attachment action through false affidavits" did not constitute abusive process). As Columbia has not presented any legal authority as to why these misrepresentations would constitute an abuse of process under Virginia law, the Court finds Columbia has not carried its burden with respect to its abuse of process claim.

### 7.     Claim 8—Exemplary Punitive Damages

The Court also rejects Columbia's standalone cause of action for exemplary punitive damages. ASAC ¶¶ 452–58. Instead, the Court finds it more appropriate to interpret Columbia's eighth cause of action as a remedy request tied to its other causes of action and analyzes it as such below. *See Mills v. Liquidators*, 206 Or. 212, 218 (1955) (pleading punitive damages as a separate cause of action "is not good pleading" practice); *see also Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) ("[A]n award of punitive damages is not a separate cause of action."); *S. Port Marine, LLC v. Gulf Oil Ltd. Pshp.*, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages, however, do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or otherwise unlawful acts.").

### 8.     Kelly, *the* Noerr-Pennington *Doctrine, and Litigation Privilege under California Law*

The Court also briefly addresses certain arguments made in the Seirus Opposition. In their Opposition, the Seirus Defendants argued that: (1) Columbia's RICO claims are precluded by the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565,

1571 (2020); and that (2) Defendants' conduct is immunized under either the *Noerr-Pennington* doctrine or California's litigation privilege. ECF No. 340-3 at 19–23.[14]

First, the Court rejects the Seirus Defendants' argument that under the Supreme Court's *Kelly* decision, Columbia's RICO claims are insufficiently pleaded because Defendants' purported scheme was not one to procure property or money. ECF No. 340-3 at 22. The facts and reasoning underlying *Kelly* are readily distinguishable from the instant case. In *Kelly*, public officials ordered a change in the number of access lanes reserved for commuters coming from Fort Lee, New Jersey to Manhattan on the George Washington Bridge during morning rush hour. *Kelly*, 140 S. Ct. at 1569–71. Although the scheme had some incidental financial costs, the Supreme Court found these costs were not the object of the scheme. *Id.* at 1573–74. Instead, the object of the scheme was to punish the Mayor of Fort Lee for refusing to support the New Jersey Governor's reelection bid. *Id.* at 1568. For these reasons, the Supreme Court held the officials had not violated federal wire fraud laws. *Id.* at 1574.

Unlike the instant case, the central concern underlying the Supreme Court's decision in *Kelly* was that federal prosecutors "could prosecute as property fraud every lie a state or local official tells in making" a regulatory decision which would result in a "a sweeping expansion of federal criminal jurisdiction." *Id.* at 1574 (citation omitted). No such concern exists here. Unlike in *Kelly*, Columbia has adequately alleged the ultimate object of the RICO scheme was to prevent Columbia from collecting a financial judgment against Seirus. ASAC ¶ 80. Columbia also adequately alleges it expended significant funds litigating the fraudulently filed IPRs and other motions relating to the Ventex IPRs in the *Columbia I* and *Columbia II* cases. *Id.* ¶¶ 294–99. In contrast to *Kelly*, these losses were not just incidental costs that resulted from the implementation of the

---

[14]     These arguments are not amongst the ones Columbia and Seirus agreed the Court should consider as one of the terms in the Parties' Settlement Agreement. ECF No. 371 at 41. Nevertheless, the Court will still, in its discretion, consider them as they go directly to the question of whether Columbia's claims are properly pleaded.

fraudulent scheme. Instead, the entire point of Defendants' scheme was to prevent Columbia from collecting a financial judgment by forcing it to litigate before the PTAB.

Second, the Court also rejects the Seirus Defendants' contention that Defendants' conduct is immunized under the *Noerr-Pennington* doctrine or California's litigation privilege. The same or analogous arguments were already extensively litigated before this Court. ECF No. 156 at 13–16. The Court's prior conclusions that the "sham" exception strips Defendants of any protection the *Noerr-Pennington* doctrine would provide and that Oregon's litigation privilege does not bar Columbia's claims is detailed and well-reasoned. The Court finds no cogent reason to revisit them.[15] For these reasons, the Court rejects the above arguments previously set forth in the Seirus Opposition.

In light of the above, the Court finds the second and third *Eitel* factors weigh in favor of granting default judgment with respect to Columbia's Federal RICO, Oregon RICO, Oregon Fraud, Virginia Fraud, and Virginia Civil Conspiracy to Commit Fraud claims, but weigh against granting default judgment as to Columbia's abuse of process claim brought under Virginia law and standalone exemplary punitive damages claim.

## C.   Factor IV: Sum of Money at Stake

Under the fourth *Eitel* factor, courts consider "whether the damages sought are proportional to the alleged harm." *Talavera*, 2021 WL 3493094, at *14. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Here, Columbia seeks a total award of $10,194,646.77, and post-

---

[15]   Although the Seirus Defendants invoked California's litigation privilege (rather than Oregon's) in their Opposition, the Seirus Defendants provided no reason or supporting authority as to why the California litigation privilege applies to state law claims raised under Oregon and Virginia law in this case. Instead, as the Court explains in detail below, the Court more properly applies Oregon state law—not California state law—in this case.

judgment interest in the amount of $548.35 per day until default judgment is entered. ECF No. 376 at 50. A significant sum is, therefore, at stake in this action.

At the same time, the vast majority of Columbia's request comes from its claim for punitive damages in the amount of $6,000,000. *Id.* As the Court has the discretion to reject or reduce Columbia's punitive damages award, the fourth *Eitel* factor becomes neutral. *See G & G Closed Cir. Events LLC v. Halstead*, No. 20-cv-2105, 2022 WL 2274546, at *3 (D. Ariz. Mar. 4, 2022) ("Where the Court has the discretion to reduce a plaintiff's requested monetary award, the fourth *Eitel* factor becomes neutral."); *Twitch Interactive, Inc. v. Johnston*, No. 16-cv-3404, 2018 WL 1449525, at *8 (N.D. Cal. Jan. 22, 2018) (finding fourth factor neutral where court had discretion to tailor damages).

### D. Factor V: Possibility of Factual Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Here, since Columbia's factual allegations are presumed true and the Ventex Defendants have failed to oppose the motion, no factual disputes have been identified that would preclude the entry of default judgment. This factor, therefore, favors the entry of default judgment.

### E. Factor VI: Reason for Default

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. Here, the Court has already found the Ventex Defendants were properly served in this action. The record also indicates the Ventex Defendants were served with notice of this default judgment motion via e-mail to Ventex's corporate e-mail address and via e-mail and United States mail to both Ventex's former attorneys in this action and current attorneys in other proceedings. ECF No. 360 at 35–36. Under such circumstances, the Court finds this factor weighs in favor of granting default judgment. *See H.I.S.C. v. Franmar Int'l Imps., Ltd.*, No. 16-cv-480-BEN-WVG, 2018 WL 8648381, at *3 (S.D. Cal. Apr. 4, 2018) ("[A] court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment.").

//

### F.   Factor VII: Policy Favoring Merits Decisions

The seventh and last *Eitel* factor emphasizes the general rule that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citation omitted). In the present case, Defendants Park and Go have never appeared to defend in this action. And while Ventex did appear, it has since failed to retain new counsel despite repeated opportunities to do so. A decision on the merits, therefore, appears impractical, if not impossible, in this case. The seventh *Eitel* factor, therefore, "does not preclude the Court from entering default judgment against the Defaulting Defendants." *Staniforth v. Total Wealth Mgmt., Inc.*, No. 14-cv-1899-GPC-JLB, 2023 WL 3805250, at *8 (S.D. Cal. June 2, 2023).

### G.   Summary of Eitel Factors

In sum, the Court finds the *Eitel* factors either weigh in favor of granting default judgment against the Ventex Defendants or are neutral. For these reasons, the Court **GRANTS** Columbia's Motion for Default Judgment with respect to Columbia's Federal RICO, Oregon RICO, Oregon Fraud, Virginia Fraud, and Virginia Civil Conspiracy to Commit Fraud claims. The Court **DENIES** Columbia's Motion with respect to all of Columbia's remaining causes of action.

## IV.   Relief Requested

The Court next considers Columbia's request for relief. In the default judgment context, a plaintiff must prove all damages sought in the complaint. *Talavera*, 2021 WL 3493094, at *14. The remedies sought "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In determining damages, a court can rely on the declarations submitted by plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2); *see Spikes v. Mann*, No. 19-cv-633-JLS-RBB, 2020 WL 5408942, at *2 (S.D. Cal. Sept. 9, 2020) ("To prove damages, a plaintiff may submit declarations, or the Court may hold an evidentiary hearing.").

Here, Columbia seeks monetary relief in the amount of $10,194,646.77, consisting of: (1) $2,369,826.24 in trebled actual damages; (2) $1,056.648.77 in prejudgment interest; (3) $754,590.93 in attorneys' fees; (4) $13,580.83 in costs; and (5) $6,000,000 in punitive damages. ECF No. 376 at 11, 50. Columbia further seeks additional prejudgment interest at a daily rate of $548.35, calculated from the date Columbia's Motion for Default Judgment was filed through the date judgment is entered. *Id.* at 11.

### A.    Choice of Law

In assessing Columbia's request for relief, the Court first determines whether Oregon or California state law governs various damages issues in this case, including the calculation of prejudgment interest and the propriety of Columbia's punitive damages request. Columbia contends Oregon law applies, but points the Court's attention to portions of the Seirus Opposition contending that California law should apply instead. ECF No. 376 at 41–43. The Court agrees with Columbia that under Oregon's choice of law rules, Oregon law applies.

Under Ninth Circuit precedent, the choice of law inquiry "has two levels." *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) (citation omitted). First, the Court "must determine whose choice of law rules govern." *Id.* "Second, applying those rules, [the Court determines] whose law applies." *Id.* Turning to the first level of this inquiry, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 65 (2013). An exception to this general rule applies, however, where an action is transferred to a different court under § 1404(a). "[A]fter a transfer under 28 U.S.C. § 1404, the choice-of-law rules of the transferor court apply." *Sarver*, 813 F.3d at 897.

Here, Columbia's case was originally filed in the District of Oregon. ECF No. 1. The Court subsequently dismissed the Seirus Defendants from the case for lack of personal jurisdiction and transferred the remainder of the case to this District under § 1404(a). ECF No. 299 at 12. Because there is no indication the Ventex Defendants were

41

not subject to personal jurisdiction in the District of Oregon and this case was transferred under § 1404, the Court applies Oregon's choice of law rules.[16]

Turning to the second level of the choice of law inquiry, "[a]s of January 1, 2010, Oregon courts follow a statutory choice of law methodology." *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1210 (D. Or. 2018) (citing ORS §§ 15.300–15.460). Under this statutory framework, "Oregon's choice of law analysis differs depending on whether the claim is a contractual claim or a noncontractual claim." *Schedler v. FieldTurf USA, Inc.*, No. 16-cv-344, 2017 U.S. Dist. LEXIS 126111, at *5 (D. Or. Aug. 9, 2017). As Columbia has brought noncontractual state law claims, the choice of law analysis here is governed by ORS §§ 15.400 to 15.460. *See id.*

Under ORS §§ 15.400 to 15.460, the Court looks to: "(1) the domicile of the injured person; (2) the domicile of the person who conduct caused the injury; (3) the location of the injurious conduct; and (4) the location of the resulting injury." *Great Am. All. Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1107 (D. Or. 2019). More specifically, ORS § 15.440(3)(a) provides that:

> If the injured person and the person whose conduct caused the injury were domiciled in different states and the laws of those states on the disputed issues would produce a different outcome, the law of the state designated in this subsection governs.
>
> (a) If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state.

ORS § 15.440(3)(a). Here, the injurious conduct and resulting injury occurred primarily in Oregon, where Columbia and the District of Oregon are located. Although the conduct

---

[16]   Columbia appears to assume this ends the Court's analysis. This is incorrect. The fact that the Ventex Defendants were transferred to this District under § 1404(a) merely allows the Court to conclude Oregon's choice of law rules would apply. It does not mean that the Court automatically applies Oregon substantive law.

and injury also occurred to some lesser degree in Virginia—where the PTAB is located—the primary focus of Defendants' scheme was to force a stay of an Oregon federal court action to prevent a corporation domiciled in Oregon from collecting a financial judgment. Or. Rev. Stat. § 15.440(3), therefore, mandates that Oregon law apply. *See Morasch Meats v. Frevol HPP*, No. 16-cv-269, 2018 U.S. Dist. LEXIS 47020, at *18 (D. Or. Mar. 22, 2018) (finding Oregon law applied under statutory framework where alleged fraud and injury occurred in Oregon).[17]

Even were the Court—for the sake of argument only—to apply California's choice of law rules, the Court would still conclude that Oregon law applies here. California applies the "governmental interest analysis" in resolving choice of law issues. *Kearney v. Salomon Smith Barney, Inc.,* 39 Cal. 4th 95, 107 (2006). This approach generally involves three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

---

[17]   Of relevance to this analysis, ORS § 15.415(1) states that: "[i]f injurious conduct occurs in more than one state, the state where the conduct occurred that is primarily responsible for the injury is the state where the injurious conduct occurred."

ORS § 15.415(3) further provides that "[i]f the same conduct causes injury in more than one state, the place of injury is in the state in which most of the injurious effects occurred or may occur."

Finally, ORS § 15.420(2) states that "[t]he domicile of a person other than a natural person is located in the state in which the person maintains its principal place of business."

*Id.* at 107–08 (internal quotation marks and citation omitted).

In urging that the Court apply California law, the Seirus Defendants contended that "California law provides added protections to companies that do business [in California]" and the failure to apply California law would "significantly impair this policy." ECF No. 340-3 at 25. This argument misses the mark. "[T]he comparative benefits of two states' laws does not drive the analysis here." *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-3889, 2018 U.S. Dist. LEXIS 34796, at *8 (N.D. Cal. Mar. 1, 2018) (holding that Texas consumer protection law applied to case involving resident of Texas who saw challenged advertisements in Texas, despite allegation advertisements emanated from California). Instead, as Columbia correctly notes, "California recognizes that 'with respect to regulating or affecting conduct within its borders, *the place of the wrong has the predominant interest.*'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (emphasis added) (quoting *Hernandez v. Burger*, 102 Cal.App.3d 795, 802 (1980)). Here, Columbia, an Oregon corporation, was injured in Oregon—where it is domiciled. As the "place of wrong," Oregon has the predominant interest and Oregon law therefore applies, even under California's choice of law rules. *See Leitner v. Sadhana Temple of N.Y., Inc.*, No. 13-cv-7902, 2014 U.S. Dist. LEXIS 198479, at *31–32 (C.D. Cal. Oct. 17, 2014) (finding Oregon law applied where plaintiff "was injured in Oregon, while she was a Oregon resident, albeit at the hands of California defendants.").

**B.    Actual Damages**

Having resolved the choice of law issue, the Court turns to Columbia's request for actual damages. Here, Columbia seeks actual damages in the amount of $789,942.08, consisting three categories: (1) $808,377.37 in fees and expenses litigating the Ventex IPRs; (2) $12,368.62 in fees and expenses litigating issues relating to the Ventex IPRs in *Columbia I*; and (3) $1,957.08 in fees and expenses litigating issues relating to the Ventex IPRs in *Columbia II*—minus the $32,761.00 that Columbia already received as a sanctions award from the PTAB. ECF Nos. 376 at 34; 371-3 ¶¶ 3, 7, 16–17. In support of its request, Columbia submits: (1) a declaration from John Motley, Columbia's Associate

General Counsel and Director of Intellectual Property; and (2) spreadsheets aggregating the amounts Columbia paid with respect to each of these three categories of fees and expenses. ECF Nos. 371-3, 371-4, 371-6, 373-13. Mr. Motley declares the information on these spreadsheets were "pulled from LegalTracker," an "e-billing software" and then "cross-referenced and verified with reports from SAP accounting software[.]" ECF No. 371-3 ¶¶ 3, 6.

In light of this evidence, supported by a sworn declaration, the Court finds Columbia has met its "relatively lenient" burden to prove actual damages. *Affinity Grp., Inc. v. Balser Wealth Mgmt., Ltd. Liab. Co.*, No. 5-cv-1555-WQH-LSP, 2007 U.S. Dist. LEXIS 26331, at *13 (S.D. Cal. Apr. 10, 2007) (finding that the burden to prove damages in default judgment "may be discharged by submitting declarations."); *see ezGDS, Inc. v. Kayak Software Corp.*, No. 9-cv-2775-WQH-NLS, 2011 U.S. Dist. LEXIS 164130, at *9 (S.D. Cal. Aug. 19, 2011) (finding entitlement to damages established through submission of declaration and invoices); *see also Barbee v. DNSPWR2 LLC*, No. 20-cv-8100, 2020 U.S. Dist. LEXIS 210069, at *11 (D. Ariz. Nov. 4, 2020) ("A plaintiff need not submit voluminous evidence to support a claim for damages; a declaration or affidavit from the plaintiff describing the factual allegations that support a damages award will suffice.").

In the Seirus Opposition, the Seirus Defendants contended Columbia's request for damages should be rejected because: (1) the amount Columbia spent defending the Ventex IPRs was unreasonably large; and (2) Columbia's damages calculation did not account for the potential of a double recovery in light of Columbia's Motion for Sanctions filed before the PTAB. ECF No. 340-3 at 26–28. The Court does not find these arguments persuasive for three reasons.

First, the Court does not find the fees and costs Columbia expended defending the Ventex IPRs to be unreasonable considering how actively these IPRs were litigated. Columbia previously submitted the declaration of Steven J. Prewitt, Columbia's lead IPR counsel, who stated the Ventex IPRs were "unusually active" and "one of the most

document intensive IPRs" he has been involved with. ECF No. 351 ¶¶ 4, 9. Mr. Prewitt noted the Ventex IPRs required the submission of more than 100 exhibits into the record. *Id.* ¶ 6. Mr. Prewitt also noted Columbia moved to amend its patent claims during the IPR process, which required further briefing, including responding to newly asserted prior art. *Id.* ¶ 7. The amount of work the Ventex IPRs would have required can easily be ascertained in reviewing their dockets. ECF Nos. 351-8; 351-9. The $520,212.44 Columbia spent defending the Ventex IPRs through the merits phase is also an amount reasonably commensurate with industry standards. ECF Nos. 351-10 at 4; 371-4; 376 at 44.

Second, the Seirus Defendants also failed to consider that a significant portion of the remaining fees and expenses Columbia incurred was a result of the additional discovery and briefing necessary to uncover the real party-in-interest relationship between Ventex and Seirus. ECF No. 351 ¶¶ 12–13. As Mr. Prewitt declares, this discovery was extensive, lasted several months, involved multiple depositions, a third-party subpoena, and numerous rounds of briefings and hearings with the PTAB. *Id.* None of this discovery and briefing would have been necessary, however, had Ventex simply been forthright regarding the relationship between Seirus and Ventex. As the amounts Columbia spent are not, on their face, unreasonable, the Court declines to engage in a "post hoc" critique of Columbia's litigation strategy. *See Foxfire, Inc. v. N.H. Ins. Co.*, Nos. 91-cv-2940, 91-cv-3464, 1994 U.S. Dist. LEXIS 9249, at *11 (N.D. Cal. July 1, 1994) (finding that defendant, having breached its duty to defend therefore forcing its insured into the marketplace to retain counsel, could not complain about time spent by outside counsel when the amount of time spent was not unreasonable on its face).

Finally, the potential double recovery issue the Seirus Opposition raised is now moot. The PTAB has since awarded Columbia sanctions in the amount of $32,761, which Columbia has deducted from its request for actual damages. ECF Nos. 371-5 at 18; 376 at 44.

1    For the above reasons, the Court finds Columbia has met its burden of proving

2    actual damages in the amount of $789,942.08.

3    ### C.    Treble Damages under RICO

4        Columbia requests that its actual damages be trebled. The Federal RICO Act

5    "mandates that a party awarded damages under RICO 'shall recover threefold the

6    damages he sustains.'" *Bd. of Dirs. of Motion Picture Indus. Pension Plan v. Sound*

7    *Dep't, Inc.*, No. 90-55341, 1991 U.S. App. LEXIS 19667, at *3 (9th Cir. Aug. 12, 1991)

8    (quoting 18 U.S.C. § 1964(c)); *see, e.g.*, *Rancheria v. Howard*, No. 20-cv-2109, 2022

9    U.S. Dist. LEXIS 2493, at *11 (E.D. Cal. Jan. 5, 2022) ("RICO provides

10   for mandatory treble damages."); *Fox Hollow of Turlock Owner's Ass'n v. Mauctrst,*

11   *LLC*, No. 3-cv-5439, 2017 U.S. Dist. LEXIS 49638, at *129 (E.D. Cal. Mar. 31, 2017)

12   ("The trebling of civil RICO damages is mandatory."); *Allstate Ins. Co. v. Nassiri*, No. 8-

13   cv-369, 2013 U.S. Dist. LEXIS 98348, at *5 (D. Nev. July 15, 2013) ("Having reviewed

14   18 U.S.C. § 1964(c), the court finds that it is required to treble damages."). The Court,

15   therefore, **GRANTS** Columbia's request for treble damages under 18 U.S.C. § 1964(c) in

16   the amount of $2,369,826.24.[18]

17   ### D.    Prejudgment Interest

18       Columbia also requests prejudgment interest in the amount of $1,056.648.77, in

19   addition to prejudgment interest at a rate of $548.35 calculated from the date Columbia's

20   Motion for Default Judgment was filed through the date judgment is entered in this case.

21   ECF No. 376 at 35–36. Columbia calculates this amount by adding up the amounts it paid

22   for each invoice billed by its counsel, trebled, and then multiplied by a nine percent per

---

[18]    Similarly, the Oregon RICO Act allows a plaintiff to recover for "three-fold the
actual damages sustained[.]" ORS § 166.725(7)(a). Columbia's ability to treble damages
under the Oregon RICO Act is the same as under the Federal RICO Act. *See Rubicon
Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d
1141, 1153 n.7 (D. Or. 2016).

annum interest rated calculated from the date it paid each invoice up to the date it filed its Motion for Default Judgment. *See* ECF No. 371-1.

In the Ninth Circuit, "state law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). In cases like this one, where the Court has both diversity and federal question jurisdiction, it has the discretion to apply either the federal or state pre-judgment interest standard. *See Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 761 (11th Cir. 2017) (holding trial court did not abuse its discretion by applying state law prejudgment interest rate where court had both diversity and federal question jurisdiction); *Rhoten v. Rocking J. Ranch, LLC*, No. 21-cv-46, 2022 U.S. Dist. LEXIS 211722, at *2–5 (D. Mont. Nov. 22, 2022) (exercising discretion to apply federal prejudgment interest standard where court had both diversity and federal question jurisdiction); *ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, No. 96-cv-6033, 1999 WL 777883, at *12 (S.D.N.Y. June 29, 1999) (same).

In determining which standard to apply, the Court notes both Columbia and the Seirus Defendants asserted that state law governs the prejudgment interest standard in this case. ECF Nos. 340-3 at 31–33; 376 at 35–36. The only dispute between the Parties was *which* state's law applies—an issue the Court already resolved above. Further, most of Columbia's claims are based in state law. The Court will, therefore, in its discretion, apply the Oregon state law prejudgment interest standard. *See Alhassid*, 688 F. App'x at 761 (holding district court did not err in applying state law prejudgment interest rate where five of plaintiff's six claims were based in state law).

Under Oregon law, generally, "interest cannot be awarded in the absence of either a contract or a statutory provision authorizing it." *Strawn v. Farmers Ins. Co.*, 353 Or. 210, 239 (2013). Here, Columbia invokes ORS § 82.010, which authorizes es an award of prejudgment interest of "nine percent per annum" that is payable on "all moneys after they become due." ORS § 82.010(1)(a). In Oregon "[w]hether a court can award

prejudgment interest usually reduces to whether the amount due was readily ascertainable." *Patton v. Mut. of Enumclaw Ins. Co.*, 296 Or. App. 266, 272 (2019) (citation omitted). Generally, this means that "a court may award prejudgment interest when the exact amount, and the time from which interest should run, is ascertained or easily ascertainable." *Ohio Cas. Ins. Co. v. Chris Dials Cont. LLC*, No. 19-cv-447, 2022 U.S. Dist. LEXIS 238215, at *11 (D. Or. Dec. 7, 2022); *see Patton*, 296 Or. App. at 27 ("[P]rejudgment interest is only awarded when the exact amount is ascertainable or easily ascertainable by simple computation or by reference to generally recognized standards and where the time from which interest should run is also easily ascertainable." (citation omitted)).

Here, both the amount due and the time from which interest should run are ascertainable. Columbia has identified the exact amounts it spent defending the Ventex IPRs and litigating issues relating to these IPRs in both *Columbia I* and *Columbia II* based on the invoices billed by its counsel. ECF No. 371-1; ECF No. 371-3 ¶¶ 3–16. Columbia has also identified the exact dates it paid these invoices and the length of time from this date of payment to the date it filed its Motion for Default Judgment. ECF No. 371-1. An award of prejudgment interest at nine percent per year from the date Columbia made each of these invoice payments is appropriate in this case. *See Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 9-cv-239, 2014 U.S. Dist. LEXIS 27129, at *57 (D. Or. Mar. 3, 2014) (awarding prejudgment interest from date invoice for defense costs were paid until date of judgment).

The Seirus Opposition raised two objections to Columbia's request for prejudgment interest. First, the Seirus Defendants contended prejudgment interest should be denied under California state law because Columbia's litigation conduct caused "years of delay." ECF No. 340-3 at 32. Oregon law, however, applies to the calculation of prejudgment interest in this case—not California law. The Seirus Defendants did not cite—nor has the Court been able to locate—any legal authority finding an award of prejudgment interest under ORS § 82.010 to be subject to judicial discretion based on a

plaintiff's litigation strategies. Instead, the opposite appears true. *Gessele v. Jack in the Box, Inc.*, No. 14-cv-1092, 2023 U.S. Dist. LEXIS 54892, at *51 (D. Or. Mar. 30, 2023) (finding the court was "not free to ignore the clear language of [ORS] § 82.010 or to create exceptions to the rule set out clearly therein.").

Second, the Seirus Defendants contended Columbia is not entitled to prejudgment interest because Columbia is already entitled to treble damages for its RICO claims. ECF No. 340-3 at 33. The Seirus Defendants are partially correct. Under Oregon law, prejudgment interest is considered a part of compensatory damages. *See Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 537 (2011) (citing *Goddard v. Farmers Ins. Co.*, 344 Or. 232, 269–70 (2008)). On the other hand, "treble damages under RICO are partly punitive, allowing recovery to exceed actual provable damages." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015) (citation omitted); *see Rose v. Abraham*, No. 8-cv-606, 2011 U.S. Dist. LEXIS 147445, at *18 (E.D. Cal. Dec. 22, 2011) ("[T]he treble damages under RICO are both remedial and punitive in nature."); *Davis v. Standefor*, No. 08-cv-8056, 2009 U.S. Dist. LEXIS 138667, at *15 (C.D. Cal. July 6, 2009) ("Treble damages under RICO are punitive in nature.").

Given the partly punitive nature of treble RICO damages, the Court finds it more appropriate to award prejudgment interest based on the *actual* damages Columbia suffered—and not based on the *trebled* damages amount—as Columbia has requested. *See Herborg v. Inter-Continental Brokerage Corp.*, No. 91-55274, 1992 U.S. App. LEXIS 24851, at *5 (9th Cir. Sept. 25, 1992) (directing district court to award prejudgment interest based on actual RICO damages); *Alexander v. Incway Corp.*, No. 11-cv-8851, 2013 U.S. Dist. LEXIS 147616, at *57 (C.D. Cal. Oct. 11, 2013) (awarding prejudgment interest on actual and not trebled RICO damages given punitive nature of trebled damages).

For these reasons, Columbia's request for prejudgment interest in the amount of $1,056.648.77 and at a daily rate of $548.35 is **DENIED**. Columbia is **DIRECTED** to

submit a revised request and Appendix A calculating prejudgment interest consistent with the Court's ruling above **within 14 days of the entry of this Order.**

### E.   Reasonable Attorneys' Fees and Costs under RICO

The Court next turns to Columbia's request for $754,590.93 in attorneys' fees and $13,580.83 in costs incurred litigating the instant suit. ECF No. 376 at 39. Under the Federal RICO Act an injured party is entitled to recover "the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c)."An award of reasonable attorney's fees and costs under RICO is mandatory." *In re Outlaw Lab'ys, LP Litig.*, No. 18-cv-840-GPC-BGS, 2022 WL 658969, at *2 (S.D. Cal. Mar. 4, 2022) (quoting *Valadez v. Aguallo*, No. 8-cv-3100, 2009 WL 10680866, at *4 (N.D. Cal. Dec. 9, 2009)).

The only question before the Court, then, is whether the fees and costs Columbia seeks are reasonable and properly supported.

### 1.   Attorneys' Fees

In the Ninth Circuit, district courts "have a *duty* to ensure that claims for attorneys' fees are reasonable and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case[.]" *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (internal quotation marks and citation omitted). "In a case in which a defendant fails to appear or otherwise defend itself . . . the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court." *Id.*; *see Currie v. Shaw*, No. 13-cv-1515, 2014 U.S. Dist. LEXIS 96076, at *5–6 (D. Or. June 6, 2014) ("Even absent objections from the opposing party, as in a default-judgment case, the court has an independent duty to review a fee petition for reasonableness.").

Here, Columbia seeks $754,590.93 in attorneys' fees, which Columbia calculates by taking the total $1,039,154.61 amount of fees its attorneys billed to this matter and subtracting $118,921.77 to cut: (1) work done that was unrelated to issues pertaining only to the Ventex Defendants; and (2) work done by timekeepers billing fewer than fifteen hours. ECF Nos. 376 at 39; 376-1 ¶¶ 40–41. From this $920,232.84, Columbia further

applies an 18% deduction to reflect the discounts provided to Columbia by its counsel. ECF Nos. 371-16; 376-1 ¶ 42.

The Court assesses the reasonableness of Columbia's fees requests using the "lodestar" method, whereby the Court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted); *see, e.g.*, *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 n.4 (9th Cir. 2018) ("For more than 30 years, the lodestar approach has been used by district courts across the country to calculate reasonable attorney's fee awards in cases that result in default judgments."); *Ally Bank v. Karakasevic*, No. 11-cv-896, 2016 U.S. Dist. LEXIS 197071, at *10–15 (N.D. Cal. Dec. 19, 2016) (applying lodestar analysis to fee award request in RICO case); *Bank v. Karakasevic*, No. 11-cv-896, 2015 U.S. Dist. LEXIS 193881, at *53–54 (N.D. Cal. June 30, 2015) (same). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Court undertakes a lodestar analysis of Columbia's fee request below.

### a. *Hourly Rates*

The Court begins with the reasonableness of the rates charged by Columbia's attorneys and support staff, as set forth in the following table:

| Timekeeper | Experience/J.D. Year | Rate Requested |
|---|---|---|
| Nika Aldrich | Shareholder/2007 | 2018: $326.35-$375<br>2019-2021: $425<br>2022: $500<br>2023: $525 |
| David W. Axelrod | Shareholder/1975 | 2018: $391.60-$450<br>2019-2020: $525 |
| Michael A. Cohen | Shareholder/1996 | 2018: $355.30-$366.80 |

| Timekeeper | Experience/J.D. Year | Rate Requested |
|---|---|---|
| Nika Aldrich | Shareholder/2007 | 2018: $326.35-$375<br>2019-2021: $425<br>2022: $500<br>2023: $525 |
| | | 2019-2020: $480<br>2022: $530 |
| Scott D. Eads | Shareholder/1990 | 2018: $412.65<br>2020-2021: $450<br>2022: $550 |
| Marc K. Sellers | Shareholder/1978 | 2018: $430.75-$453.90<br>2019-2020: $500 |
| Jason A. Wrubleksi | Shareholder/2007 | 2019-2021: $325<br>2022: $450<br>2023: $485 |
| Erin M. Forbes | Of Counsel/2013 | 2018: $254.55-292.50<br>2019-2020: $310 |
| Mario E. Delegato | Associate/2019 | 2019-2020: $240<br>2022: $240 |
| Annie White | Associate/2020 | 2021: $280 |
| David. T. Aldred | Paralegal | 2019-2021: $205 |

ECF No. 376-1 at 15.

Reasonable attorneys' fees are calculated according to "the prevailing market rates in the relevant community[.]" *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Evidence that the Court should consider includes [a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases[.]" *Dalfio v. Hanna*, No. 21-cv-910-JLS-AHG, 2022 U.S. Dist. LEXIS 149649, at *3–4 (S.D. Cal. Aug. 19, 2022) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). For intellectual property cases, courts frequently refer to the American Intellectual Property Law Association's ("AIPLA's") surveys for billing rates in the relevant community. *See Autodesk, Inc. v.*

*Flores*, No. 10-cv-1917, 2011 U.S. Dist. LEXIS 53277, at *4 (N.D. Cal. May 18, 2011) (collecting cases).

Here, the Court finds Columbia has sufficiently established the reasonableness of the hourly rates of its attorneys who have worked on this matter. First, as Columbia notes, the billing rates of its attorneys are in line or lower than the rates charged by intellectual property attorneys of similar experience levels, as set forth in the AIPLA's 2020 survey. ECF No. 371-15.[19]

The hourly rates of Columbia's attorneys are also consistent with those found reasonable by courts in this District. With respect to the partner-level attorneys who have worked on this case—Ms. Aldrich, Mr. Axelrod, Mr. Cohen, Mr. Eads, Mr. Seller and Mr. Wrubleski—Columbia submitted rates ranging from $326.35 to $550, which are commensurate with rates found to be reasonable in this District for attorneys of similar experience levels. *See, e.g.*, *Soler v. Cty. of San Diego*, No. 14-cv-2470-MMA-RBB, 2021 U.S. Dist. LEXIS 114484, at *15 (S.D. Cal. June 18, 2021) ("[C]ourts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour.") (collecting cases); *see also Martinez v. Costco Wholesale Corp.*, No. 19-cv-1195-WVG, 2023 U.S. Dist. LEXIS 31520, at *34 (S.D. Cal. Feb. 23, 2023) ("[C]ase law as recent as 2022 in this District has established that partner-level hourly rates may reasonably range between $450 and $750.") (collecting cases).

Similarly, with respect to the associate-level attorneys who have worked on this case—Ms. Forbes, Mr. Delegato, and Ms. White—Columbia submitted rates ranging from $240 to $310, which are also commensurate with rates found reasonable for

---

[19] Although this case is not a strict patent, copyright, or trademark infringement case, the underlying conduct at issue relates to a fraud aimed at the PTAB to delay a patent infringement action. Given that this case involved intellectual property issues, the Court finds the AIPLA's 2020 survey to be persuasive evidence of reasonable rates for attorneys working on this case.

attorneys of similar experience levels in this District. *See, e.g.*, *Martinez*, 2023 U.S. Dist. LEXIS 31520, at *36 (finding hourly rate of $550 reasonable for attorney with seven years of experience); *Kinder v. Woodbolt Distrib., LLC*, No. 18-cv-2713-DMS-AGS, 2021 U.S. Dist. LEXIS 64275, at *26 (S.D. Cal. Apr. 1, 2021) (adopting as reasonable rates between $345 to $745 per hour for associate attorneys); *Herring Networks, Inc. v. Maddow*, No. 19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *20–21 (S.D. Cal. Feb. 5, 2021) (finding hourly rate of $470 per hour reasonable for associate with three years of experience); *Makaeff v. Trump Univ., LLC*, No. 10-cv-940-GPC-WVG, 2015 U.S. Dist. LEXIS 46749, at *12, 17–18 (S.D. Cal. Apr. 9, 2015) (finding attorney hourly rates ranging from $600 to $825 for partners and $250 to $440 for associates to be reasonable).

The Court also adopts as reasonable Mr. Aldred's hourly rate of $205 for his services as a paralegal in this case. Again, this rate is commensurate with rates found reasonable for paralegals in this District. *See, e.g.*, *Martinez*, 2023 U.S. Dist. LEXIS 31520, at *36 (adopting as reasonable paralegal hourly rate of $250); *Durruthy v. Charter Commc'n, LLC*, No. 20-cv-1374-W-MSB, 2021 U.S. Dist. LEXIS 253560, at *15 (S.D. Cal. Sep. 30, 2021) ("This district has awarded paralegal fees in line with the $175 to $250 requested[.]"); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2019 U.S. Dist. LEXIS 64418, at *44 (S.D. Cal. Apr. 15, 2019) ("Reasonable rates for paralegals in this district have ranged from $125 to $225.").

Finally, the rates of Columbia's attorneys and staff are also reasonably commensurate with rates found reasonable by the District of Oregon, where this case originated. "Judges in the District of Oregon use the Oregon State Bar Economic Survey ('OSB Economic Survey') as a benchmark for assessing the reasonableness of hourly billing rates." *Langvin v. City of Portland*, No. 21-cv-1595, 2022 U.S. Dist. LEXIS 178549, at *5 (D. Or. Sep. 30, 2022); *see Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002) ("To determine whether a requested hourly rate is reasonable, this Court uses the Oregon State Bar Economic Survey (Economic Survey) as an initial

benchmark."). Using the 2022 Oregon State Bar ("OSB") Economic Survey as a benchmark, the rates of Columbia's attorneys are in line with the rates for private practice attorneys of similar experience levels based in Portland. *See* OSB, *Oregon State Bar 2022 Economic Survey*, 42–43 (2023), https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf [https://perma.cc/QXW7-DGTM].

For the reasons set forth above, the Court adopts the attorney and paralegal hourly rates Columbia requests as reasonable for purposes of determining the lodestar value.

b.    *Hours Expended*

The Court next considers whether Columbia's counsel and support staff expended a reasonable number of hours in this litigation. "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers*, 796 F.2d at 1210. "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

Here, Columbia submits: (1) the declaration of Nika Aldrich, Columbia's counsel; (2) a table summarizing the fees billed to Columbia on this matter from its counsel on a per invoice basis; and (2) almost three-hundred pages of invoices issued to Columbia by its counsel for work performed between October 2018 through March 2023. ECF Nos. 376-1, 371-16, 376-2. The current form of this evidence, however, makes it difficult, if not impossible, for the Court to undertake a proper lodestar analysis.

Centrally, while Columbia provides the total amount of attorneys' fees it is seeking to recover in this action, nowhere does Columbia identify the total number of *hours* billed or, more appropriately, the total number of *hours* each individual timekeeper billed. *See, e.g.*, *Exxon Mobil Corp. v. Future Grp. LLC*, No. 12-cv-456, 2012 U.S. Dist. LEXIS 107838, at *4 (E.D. Cal. July 31, 2012) (denying request for attorneys' fees where there was "no identification of the hours worked either in total or by each individual

56

attorney[.]"). Columbia's failure to provide this information prevents the Court from performing a meaningful judicial review.[20]

Further, the Court's examination of Columbia's time records reveals additional deficiencies that again make it difficult for the Court to determine whether the hours expended in this case were reasonable. First, Columbia submits that "[c]ertain detailed work descriptions rising to the level of attorney-client privileged information or attorney work product have been redacted" from its billing records. ECF No. 376-1 ¶ 50. But even if those entries are protected by the attorney-privilege privilege, "without the ability to review the unredacted records under seal, the Court cannot evaluate the work completed that is the subject of those entries." *Rooter Hero Phx. Inc. v. Beebe*, No. 22-cv-220, 2023 U.S. Dist. LEXIS 12804, at *10–11 (D. Ariz. Jan. 25, 2023).

Second, Columbia contends it excluded from its request billing entries relating to issues "that could be argued to be wholly unrelated" to the Ventex Defendants. ECF No. 376-1 ¶ 40. It further excluded fees for certain timekeepers who billed fewer than fifteen total hours or who worked primarily on matters pertaining only to the Seirus Defendants. *Id.* ¶ 41. Nevertheless, Columbia does not indicate in the invoices submitted to the Court which exact entries it excluded.

For these reasons, Columbia's request for its attorneys' fees litigating this action is **DENIED.** To be awarded its attorneys' fees, Columbia will be required to "show its work" and perform a proper lodestar analysis. Columbia is **DIRECTED** to provide the Court with a revised request addressing the Court's above concerns **within 14 days of the entry of this Order.**[21]

//

---

[20]    While it could be possible for the Court to glean this information by sifting through all of Columbia's individual invoices, the Court declines to take on this burden.

[21]    Columbia further requests that the Ventex Defendants be held jointly and severally liable for Columbia's attorneys' fees. ECF No. 376 at 37–38. The Court defers ruling on this request until after Columbia submits its revised request.

### 2.    Costs

The Court next turns to Columbia's request for costs. Here, Columbia requests $13,580.83 in costs, which Columbia derives based on: (1) $400 in filing fees associated with filing its Complaint; (2) $9,150 in translation fees and service expenses incurred serving or attempting to serve documents on the Ventex Defendants; (3) $1,262.73 for service of third-party subpoenas; (4) $1,135 in fees for services rendered by a forensic accountant firm to formulate discovery regarding the IPR Funding Agreement; (5) $1,221.10 incurred for obtaining transcripts of court hearings in this matter; and (6) $412 in filing fees for filing *pro hac vice* applications for certain attorneys once the case was transferred from the District of Oregon to this District. ECF No. 376-at 1 ¶¶ 52–58. In support, Columbia submits invoices and other evidence supporting each of these cost requests. ECF Nos. 371-19, 371-20, 371-21, 371-22, 371-23, 371-24.

Federal Rule of Civil Procedure 54(d) contains two separate provisions for costs. To request taxable costs, a prevailing party must file a bill of costs with the clerk. Civil Local Rule 54.1(a). Taxable costs are taxed by the Clerk of Court. *See* Fed. R. Civ. P. 54(d)(1); Local Civ. Rule 54.1(a); *Edwards v. Ford Motor Co.*, No. 11-cv-1058-MMA-BLM, 2016 U.S. Dist. LEXIS 59651, at *29 (S.D. Cal. Jan. 22, 2016) ("To request taxable costs, a prevailing party must abide by Federal Rule of Civil Procedure 54(d)(1) and Civil Local Rule 54.1, as taxable costs are taxed by the Clerk of Court."). In contrast, a party may recover nontaxable expenses by motion to the court. *Id.*

Despite this distinction, Columbia makes no attempt to separate its request between taxable and nontaxable costs. Instead, Columbia states that "most" of the costs it is seeking to recover are taxable, but that "to the extent that such costs are awarded pursuant to the instant Motion, Columbia does not intend to seek their recovery in connection with any separate bill of costs or taxation proceedings." ECF No. 376 at 40. The fact that Columbia might prefer to seek an award of both taxable and nontaxable costs by motion to this Court, however, does not make this the appropriate procedure to recover both. *See, e.g., RD Legal Funding, LLC v. Erwin & Balingit, LLP*, No. 8-cv-597-

L-RBB, 2011 U.S. Dist. LEXIS 2137, at *13 (S.D. Cal. Jan. 10, 2011) (denying request for taxable costs on motion to court).

For these reasons, the Court **DENIES** Columbia's request for costs. Columbia is **DIRECTED** to provide the Court with a revised request **within 14 days of the entry of this Order.** The request should omit all taxable costs, which Columbia may instead pursue under the procedures provided for by Local Civil Rule 54.1.

### F.   Punitive Damages

Finally, the Court turns to Columbia's request for punitive damages in the amount of $6,000,000 for Columbia's Oregon state law RICO and fraud claims. ECF No. 376 at 40–41.[22]

The Court's award of punitive damages in this case is discretionary. *See Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1131 (9th Cir. 1997) ("[A] plaintiff *may* receive both treble damages under RICO and state law punitive damages for the same course of conduct."); Or. Unif. Civ. Jury Instr. No. § 75.02 (indicating in model civil jury instructions that a jury "*may* award punitive damages." (emphasis added)). While the Court has the discretion to award punitive damages in this case, it declines to do so here.

The Court has already found that Columbia is entitled to treble damages in the amount of $2,369,826.24 on its RICO claims. Considering the magnitude of this award— when compared to Columbia's actual damages of $789,942.08—the Court finds the trebled damages awarded in this case are already sufficiently punitive. *See, e.g.*, *Rose v. Abraham*, No. 8-cv-606, 2011 U.S. Dist. LEXIS 147445, at *18 (E.D. Cal. Dec. 22, 2011) (denying request for punitive damages in light of award of trebled RICO damages); *Davis v. Standefor*, No. 8-cv-8056, 2009 U.S. Dist. LEXIS 138667, at *15 (C.D. Cal.

---

[22]   Columbia fails to identify any statute or legal authority that would authorize punitive damages for any of its other causes of action. *See* ECF No. 376 at 40–41, 48–50. For these reasons, the Court will consider whether Columbia is entitled to punitive damages based on its Oregon RICO and fraud claims only.

July 6, 2009) ("[B]ecause the Court has awarded Plaintiffs treble damages on their RICO claim, an additional award of exemplary damages would be inappropriate in this case.").

For these reasons, the Court **DENIES** Columbia's request for punitive damages.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Columbia's motion for default judgment. Specifically:

1. The Court **GRANTS** judgment in Columbia's favor and against the Ventex Defendants, with respect to Columbia's Federal RICO, Oregon RICO, Oregon Fraud, Virginia Fraud, and Virginia Civil Conspiracy to Commit Fraud claims.

The Court **DENIES** judgment in Columbia's favor with respect to Columbia's abuse of process claim brought under Virginia law.

The Court further **DENIES** judgment in Columbia's favor with respect to Columbia's exemplary punitive damages claim, to the extent Columbia intended to assert this claim as a separate, standalone cause of action.

2. The Court **GRANTS** Columbia's request for trebled actual damages in the amount of $2,369,826.24.

3. The Court **DENIES** Columbia's request for prejudgment interest.

4. The Court **DENIES** Columbia's request for attorneys' fees and costs.

5. The Court **DENIES** Columbia's request for punitive damages.

Columbia may submit an amended request for prejudgment interest, attorneys' fees, and costs **within 14 days of the entry of this Order**. If Columbia does not submit an amended request for prejudgment interest by the requisite deadline, the Court will enter a final judgment in Columbia's favor in the amount of $2,369,826.24.

**IT IS SO ORDERED.**

Dated:  September 20, 2023

_____
Hon. Robert S. Huie
United States District Judge